## AMERICAN NET AND TWINE COMPANY v. WORTHINGTON.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR. THE DISTRICT OF MASSACHUSETTS.

No. 55.   Argued October 27, 1891. — Decided November 9, 1891.

In fixing the classification of goods for the payment of duties, the name or designation of the goods is to be understood in its known commercial sense; and their denomination in the market will control their classification without regard to their scientific designation, the material of which they may be made or the use to which they may be applied.

Gilling twine, when imported as gilling, for the manufacture of gill nets, is liable only to the duty of 25 per cent under the act of March 3, 1883, 22 Stat. 488.

Statements made in Congress by the promoters of a customs-act are inadmissible as bearing upon its construction; but the proceedings therein may be referred to to inform the court of the reasons for fixing upon a specific rate of duty.

Where a customs-act imposes a duty upon an article by a specific name, general terms in the act, though sufficiently broad to cover it, are not applicable to it.

In cases of doubt in the construction of a customs-act, the courts resolve the doubt in favor of the importer.

THIS was an action against the collector of the port of Boston to recover back certain duties upon gilling twine, paid under protest. By written stipulation of the parties the case was heard by the court without a jury, and the following facts were found :

"The plaintiff corporation, whose business is the manufacture of fishing nets and seines, in the months of February, March, April and May, 1885, made seven different importations of gilling into the port of Boston from Liverpool — in all, forty-five cases. The merchandise was invoiced and entered at the custom-house as gilling twine. Upon the appraisement by the custom-house officials here, the merchandise was classified as linen thread, and the collector assessed upon it a duty of 40 per cent ad valorem. The plaintiff in each instance paid the assessed duty under protest, claiming that the article was dutiable at twenty-five per cent ad valorem as gilling twine. Upon appeals to the Secretary of the Treasury, the decisions of the collector were affirmed, and the plaintiff then brought this suit to recover back the alleged excess, which amounted on all the importations to $1685.85. All the proceedings in respect to the plaintiff's protests and appeals were regular and taken in due season, and this suit was commenced within the time limited by law for bringing such suits. The merchandise after its importation was used by the plaintiff in the manufacture of gill nets, and was imported expressly for that purpose.

"The article in question is No. 35 three-cord unbleached linen thread of superior quality, put up in half-pound balls, and was manufactured by the Scotch firm of W. & J. Knox at their works in Kilbirnie, Scotland. For more than twenty years thread of this description has been used by the plaintiff and other net-makers in this country for the manufacture of gill nets, principally for the fisheries on the great Western lakes, the numbers of the thread used for this purpose ranging from 10 to 60. For many years before the tariff act of 1883, this kind of thread, of the manufacture of W. & J. Knox and other foreign makers, was imported under the name of gilling twine to be used in making gill nets, and was invoiced and entered at the custom-house under that name, and was so designated

on price-lists and trade circulars of the foreign makers. For many years before the act no other imported article was known by the special name of gilling twine. One of the custom-house officers testified that he never heard or knew of any other imported article that was called gilling twine.

"On the other hand, the article is clearly not twine. It is not suitable for the uses which twine is commonly put to. It is made of flax from which the gum has been removed by boiling. It is flexible, without the stiffness of twine, highly finished, capable of being used for sewing, and is largely used for machine sewing in many trades. It is not claimed by the plaintiff in this suit that in a general sense, it is anything else than linen thread, or that it differs in material or quality or mode of manufacture from other similar threads. For many years linen thread of the same kind and quality has been both imported from abroad and made here in large quantities for many other purposes than for gilling. It is used by boot and shoe makers, upholsterers, bookbinders, saddlers and in many other trades as sewing thread. When imported for this purpose it is invoiced and entered as linen thread, and is so known in commerce and designated on price-lists and trade circulars. That which is made here for these uses is known only as linen thread. It is also made here for gilling purposes, and in such cases is invariably called gilling thread, never gilling twine. Of all that is made here or imported, at least nine-tenths, and probably nineteen-twentieths, is used for other purposes than as gilling. It also appears that there is a large, coarse twine made of hemp, which is imported under the name of salmon twine, and is made into nets for gilling salmon. This article seems never to have acquired the name of gilling twine in the trade. There is also a cotton gilling twine which is made in this country, but never imported."

Upon the foregoing facts the court decided that the plaintiff could not maintain the action, and ordered judgment for the defendant with costs.

The plaintiff thereupon sued out a writ of error from this court. The opinion of the court below is reported in 33 Fed. Rep. 826.

*Mr. Edward Hartley* for plaintiff in error. *Mr. Walter H Coleman* and *Mr. Charles P. Searle* were with him on the brief.

*Mr. Assistant Attorney General Parker* for defendant in error.

MR. JUSTICE BROWN, after stating the case, delivered the opinion of the court.

The decision of this case depends upon the construction of the tariff act of March 3, 1883, 22 Stat. 488, c. 121. Schedule J of this act, page 507, provides for a duty of 40 per cent *ad valorem* upon "flax or linen thread, twine and pack thread, and all manufactures of flax, or of which flax shall be the component material of chief value, not specially enumerated or provided for in this act;" while a subsequent paragraph of the same schedule imposes a duty of 25 per cent *ad valorem* upon "seines and seine and gilling twine." The question is, to which category, under the finding of facts, these goods are to be assigned. We think the following extract from the finding is decisive in favor of the position taken by the plaintiff in error: "For many years before the tariff act of 1883, this kind of thread, of the manufacture of W. & J. Knox and other foreign makers, was imported under the name of gilling twine, to be used in making gill nets, and was invoiced and entered at the custom-house under that name, and was so designated on price-lists and trade circulars of the foreign makers. For many years before the act no other imported article was known by the special name of gilling twine."

It is a cardinal rule of this court that, in fixing the classification of goods for the payment of duties, the name or designation of the goods is to be understood in its known commercial sense, and that their denomination in the market when the law was passed will control their classification without regard to their scientific designation, the material of which they may be made or the use to which they may be applied. *Two Hundred Chests of Tea,* 9 Wheat. 430, 438; *United States v. One Hundred and Twelve Casks of Sugar,* 8 Pet. 277:

*Elliott* v. *Swartwout*, 10 Pet. 137; *Curtis* v. *Martin*, 3 How. 106; *Arthur* v. *Morrison*, 96 U. S. 108; *Swan* v. *Arthur*, 103 U. S. 597; *Schmieder* v. *Barney*, 113 U. S. 645; *Arthur* v. *Butterfield*, 125 U. S. 70; *Robertson* v. *Salomon*, 130 U. S. 412.

It must be assumed that Congress in imposing a duty upon "gilling twine" *eo nomine*, intended that some article used for the purpose of manufacturing gill nets should pay duty as such, and as the article in question is and was, for many years before the act was passed, imported, invoiced and entered at the custom-house under that name, and was so designated in price-lists and trade circulars, and was actually intended for use in the manufacture of gill nets, and no other article was imported under that name, it follows that it should be classified as such, notwithstanding it is in fact linen thread, and when intended for sewing purposes is invoiced and entered as linen thread.

The argument for the higher duty is based upon the finding that the article is not twine, is not suitable for the purposes to which twine is commonly put, because made of flax from which the gum has been removed by boiling, and is flexible, without the stiffness of twine, highly finished, capable of being used for sewing and largely used for machine sewing in many trades. It would seem to follow from this that, in the opinion of the court below, twine must be stiff and contain a certain quantity of gum, as the most ordinary form of twine for wrapping parcels undoubtedly does. But these qualities are not essential to twine, which is defined by Webster as, "A strong thread composed or two or three smaller threads or strands twisted together, and used for various purposes, as for binding small parcels, making nets and the like; a small cord or string." If in fact twine were necessarily stiff and contained an infusion of gum, there could be no such thing as "gilling twine," since for the purpose of gill nets, linen thread must combine the utmost possible flexibility of movement with lightness of texture, strength and invisibility. It is stated in the opinion of the general appraisers at New York of December 4, 1890, referred to in the brief of counsel, that "the action of

the water would kink the hard twisted thread and dissolve the gum or sizing, thus rendering the nets made therefrom comparatively worthless." It should be so light as to float in the current, so fine and so near the color of the water as to be invisible, and so strong that when the fish are caught by the gills they are held by the tenacity of the thread. It is undoubtedly thread, and the finding is that home-made linen thread used for gilling purposes is invariably (and more properly) called gilling thread; never gilling twine. We are bound, however, to give some effect to the words "gilling twine," and if there be no other imported article of that name, it follows conclusively that this must have been the article intended. Nor is this inference greatly weakened by the fact that the article is nothing less than linen thread, differing not in material quality or mode of manufacture from other similar thread, that nine-tenths of the thread so imported is used for other purposes than gilling, and that when so imported, it is invoiced and entered as linen thread, and is so known in commerce, and designated on price-lists and trade circulars.

It would appear from the Treasury reports and circulars to admit of some doubt whether there is an absolute identity between the thread used for gilling and that used for sewing; but it is not necessary for us to determine whether the same duty should be imposed if the same article be imported for different purposes. Of course this would follow only in case the two articles were absolutely identical, and if, as found by the board of general appraisers of New York, to which reference has already been made, the difference between the two is so marked as to render them easily separable, the question of identity would not arise. It was found by them that the machine thread is a harder twist and contains more sizing than the gilling, and that the former could not be satisfactorily used for the manufacture of gill nets.

It is sufficient for the purposes of this case to hold that, when imported as gilling, for the manufacture of gill nets, it is liable only to the duty of 25 per cent.

While the statements made and the opinions advanced by the promoters of the act in the legislative body are inadmis-

sible as bearing upon its construction, yet reference to the proceedings of such body may properly be made to inform the court of the exigencies of the fishing interests and the reasons for fixing the duty at this amount. *Jennison* v. *Kirk*, 98 U. S. 453, 459; *Blake* v. *National Banks*, 23 Wall. 307, 317; *The Collector* v. *Richards*, 23 Wall. 246, 258; *Gilmer* v. *Stone*, 120 U. S. 586, 590; *United States* v. *Union Pacific Railroad*, 91 U. S. 72, 79. It seems that the duty upon seines was originally fixed at six and one-half cents per pound; when, upon representations of the fishermen upon the Lakes, who use seines and gill nets which are only made of Scotch and Irish flax, and always from imported twine, that they were suffering from the competition of Canadian fishermen, who imported their twine free of duty and found a ready sale for their fish in American ports, also free of duty, an effort was made to put seines and seine and gilling twine on the free list; but the matter was finally compromised by fixing the duty at 25 per cent ad valorem. Unless this be held to include the thread of which these gill nets are actually made, the intention of Congress will evidently be defeated.

While in the absence of a more specific designation this article might properly be classed as linen thread, it is a familiar rule in revenue cases that, where Congress has designated an article by a specific name and imposed a duty upon it, general terms in the same act, though sufficiently broad to comprehend such article, are not applicable to it; in other words, the article will be classified by its specific designation, rather than under a general description. *Homer* v. *The Collector*, 1 Wall. 486; *Arthur* v. *Lahey*, 96 U. S. 112; *Arthur* v. *Stephani*, 96 U. S. 125; *Movius* v. *Arthur*, 95 U. S. 144.

We think the intention of Congress that these goods should be classified as "gilling twine" is plain; but were the question one of doubt, we should still feel obliged to resolve that doubt in favor of the importer, since the intention of Congress to impose a higher duty should be expressed in clear and unambiguous language. *United States* v. *Isham*, 17 Wall. 496; *Hartranft* v. *Wiegmann*, 121 U. S. 609; *Gurr* v. *Scudds*, 11 Exch. 190.

The judgment of the court below will, therefore, be
*Reversed, and the case remanded for further proceedings in
conformity with this opinion.*

MR. JUSTICE BRADLEY and MR. JUSTICE GRAY were not
present at the argument, and took no part in the decision of
this case.