ERHARDT, Collector, *v.* ULLMAN *et al.*

(*Circuit Court of Appeals, Second Circuit.* July 20, 1892.)

1. CUSTOMS DUTIES—ACTIONS TO RECOVER EXCESS—INSTRUCTIONS—METAL BUTTONS.

Plaintiffs having imported certain buttons composed partly of brass and partly of tin, the collector imposed a duty of 45 per cent. *ad valorem* under the residuary clause of the metal schedule (C) of the tariff act of 1883. Plaintiffs sued for an alleged excess, claiming that the buttons were dutiable under the clause of Schedule N which places a duty of 25 per cent. on buttons not specially enumerated, not including brass, gilt, or silk buttons. Plaintiffs introduced evidence tending to show that "brass buttons" had a commercial meaning, which included most, but not all, buttons made of brass; that certain buttons made of brass, but gilded, were known as "gilt buttons;" and that the buttons imported by plaintiffs were known as "fancy metal buttons." Defendant gave evidence tending to show that there was no difference between the trade meaning and the popular meaning of "brass buttons." *Held,* that the court properly charged that, if the buttons in question were not brass buttons, according to the trade meaning, a verdict should be returned for plaintiffs; otherwise for defendant.

2. SAME—EVIDENCE—HARMLESS ERROR.

Defendant having introduced witnesses who testified that the term "brass buttons" had no different meaning in trade than in common parlance, the court permitted them on cross-examination to be asked what they understood the term to mean in common parlance. Each answered that it meant buttons composed principally of brass. *Held* that, while the definition of terms having no special meaning is a matter of law, this testimony was harmless, because the definition given by the witnesses was precisely that which the court would have given, and also because the jury were instructed to return a verdict for defendant unless the importations were not brass buttons according to the commercial meaning of the term.

Error to the Circuit Court of the United States for the Southern District of New York.

Action by Louis Ullman and others against Joel B. Erhardt, as collector of the port of New York, to recover duties paid under protest. Verdict and judgment for plaintiffs. Defendant brings error. Affirmed.

*Edward Mitchell,* U. S. Atty., and *Charles Duane Baker,* Asst. U. S. Atty., for plaintiff in error.

*Wm. Wickham Smith,* for defendant in error.

Before WALLACE and SHIPMAN, Circuit Judges.

WALLACE, Circuit Judge. This is a writ of error by the defendant in the court below to review a judgment of the circuit court for the plaintiffs, entered upon the verdict of a jury. The action was brought to recover duties alleged to have been illegally exacted by the defendant as collector of the port of New York upon importations of merchandise by the plaintiffs in 1888, consisting of metal buttons, composed partly of brass and partly of tin. The collector assessed a duty upon the merchandise as manufactures of metal under the clause of Schedule C of the tariff act of March 3, 1883, which reads as follows:

"Manufactures, articles, or wares not specially enumerated or provided for in this act, composed wholly or in part of iron, steel, copper, lead, nickel, pewter, tin, zinc, gold, silver, platinum, or any other metal, and whether partly or wholly manufactured, 45 per centum *ad valorem.*"

The plaintiffs recovered upon the theory that the duty should have been assessed under the clause of Schedule N of the same act, which reads as follows:

"Buttons and button molds, not specially enumerated or provided for in this act, not including brass, gilt, or silk buttons, 25 per centum *ad valorem.*"

Evidence was given for the plaintiffs upon the trial tending to show that at and prior to the time of the passage of the act brass buttons were a well-known article of trade and commerce in this country; that the term "brass buttons," as commercially used, covered many kinds of buttons made of brass, but not all kinds; that there were buttons made of brass, but gilded, and these were commercially known as "gilt buttons;" and that buttons like those imported by the plaintiffs were known to the trade as "fancy metal buttons," and not as "brass buttons." The defendant gave evidence tending to show that prior to and at the time of the passage of the act there was no distinction between the trade meaning of the term and its meaning in common acceptation. The trial judge instructed the jury, in substance, that if they found that the importations in suit were not brass buttons, according to the meaning of that term as it was understood in trade and commerce in this country at the time of the passage of the tariff act, the plaintiffs were entitled to a verdict; otherwise the defendant should have a verdict.

Inasmuch as it was not claimed that the importations were gilt buttons or silk buttons, but were buttons of which the material was tin and brass, the plaintiffs were entitled to recover, unless the importations should have been classified as brass buttons, and, as such, not included in the general enumeration of Schedule N. If, at the time the act was passed, there were no articles commercially designated as "brass buttons" by dealers in this country, then, doubtless, all buttons made of brass, or of brass as a component material of principal value, would fall within the class not included in the enumeration of Schedule N. But if there were such articles, it must be presumed that congress referred to them, because in construing statutes imposing duties upon imported articles it is only when a given article is found not to have had a commercial designation at the time of the enactment that resort is to be had to other definition. One of the more recent cases in which this familiar rule of construction is reiterated is *Robertson* v. *Salomon*, 130 U. S. 412, 9 Sup. Ct. Rep. 559, in which the court used this language:

"The commercial designation, as we have frequently decided, is the first and most important designation to be ascertained in settling the meaning and application of the tariff laws. * * * But if the commercial designation fails to give an article its proper place in the classification of the law, then resort must necessarily be had to the common designation."

It is said in the still more recent case of *Twine Co.* v. *Worthington*, 141 U. S. 468, 12 Sup. Ct. Rep. 55:

"In fixing the classification of goods for the payment of duties the name or designation of the goods is to be understood in its known commercial sense,

and their denomination in the market will control their classification without regard to their scientific designation, the material of which they may be made, or the use to which they may be applied."

The trial judge submitted to the jury the only questions of fact which were in the case. The only legitimate bearing of the evidence introduced by the defendant was its tendency to show that the importations had no commercial designation. If there was no commercial designation, the plaintiffs had no case; and this was the issue distinctly left to the jury by the instructions of the judge. It was clearly correct to receive testimony in behalf of the plaintiffs as to the meaning of the term "brass buttons" in trade and commerce, and it would have been error to instruct the jury, as requested, in effect, by the defendant, to ignore that testimony. There is therefore no merit in the assignment of error respecting the instructions given and refused by the trial judge.

The remaining assignments of error relate to the reception of testimony. The defendant introduced witnesses who testified that the term "brass buttons" did not have any different meaning in trade and commerce than it had in common parlance. Thereupon the witnesses were permitted, on cross-examination, under objection and exception by the defendant, to state what they understood the term to mean in common parlance. Each of them testified that he understood it to mean buttons made principally of brass. Although these statements were not of any value except as affording a test of the intelligence of the witnesses, because the definition of terms having no special meaning is a matter of law, they were innocuous, both because the definition of the witnesses was precisely that which the court would have given to the jury, and also because the jury were instructed that the defendant was entitled to a verdict unless the importations were not brass buttons according to the commercial meaning of the term.

The judgment is affirmed.