In re WETHERELL.

(Circuit Court, D. Massachusetts. March 10, 1894.)

No. 3,602.

1. CUSTOMS DUTIES—"STEEL STRIPS."
    Steel in the form of strips, 3 to 3½ inches wide, less than 25-1000 of an inch thick, and more than 100 feet long, which were cold rolled to a

surface finish, and not cut from wider pieces, is not "sheet steel in strips," within the meaning of Tariff Act Oct. 1, 1890, par. 148, cl. 2; for "sheet steel," as commercially understood, is always hot rolled.

**2.** SAME—RODS AND BARS.

Such strips of steel come within paragraph 146 of such act, which imposes a duty of two cents a pound on "steel in all forms and shapes not specially provided for;" but they are neither bars nor rods, and hence are not subject to the additional duty imposed by paragraph 152 on "steel bars or rods, of whatever shape or section, which are cold rolled."

At Law. Petition by Frank J. Wetherell for a review of the decision of the board of general appraisers assessing merchandise for duty.

Sherman Hoar, U. S. Atty.

Joseph H. Robinson and Selwyn Z. Bowman, for petitioner.

COLT, Circuit Judge. This is a petition praying for a review of a decision of the board of general appraisers, assessing, on several lots of steel imported into the port of Boston by the petitioner, a duty of 50 per centum ad valorem, under the second proviso of paragraph 148 of the tariff act of October 1, 1890, (26 Stat. 577.) The steel imported was in the form of strips from 3 to 3½ inches wide, more than 100 feet in length, less than 25-1000 of an inch in thickness, and valued at 6½ cents per pound. It was cold rolled to a surface finish, and was not cut or sheared from wider pieces. The collector levied a duty on the steel at the rate of two cents per pound, under the following clause in paragraph 146 of said act: "Steel in all forms and shapes, not specially provided for in this act;" and also an additional duty of one-fourth of one cent a pound, under paragraph 152, which provides for such additional duty "on all iron or steel bars or rods, of whatever shape or section, which are cold rolled, cold hammered, or polished in any way." The petitioner duly protested against this additional duty, and contended that the steel was only dutiable at the rate of two cents per pound, under paragraph 146. The board of general appraisers decided that the collector was in error, and held that the article is specially provided for; that it is sheet steel in strips, and subject to a duty of 50 per centum ad valorem under the second proviso of paragraph 148, which is as follows:

"That flat steel wire, or sheet steel in strips, whether drawn through dies or rolls, untempered or tempered, of whatsoever width, twenty-five, one thousandths of an inch thick or thinner (ready for use or otherwise), shall pay a duty of fifty per centum ad valorem."

Upon the present petition, the United States contend that the board of general appraisers was right, while the petitioner insists that the import in question was only subject to a duty at the rate of two cents per pound, under paragraph 146. It is admitted that the steel is neither bars nor rods, and that, therefore, the collector was wrong in assessing the additional duty of one-fourth of one cent per pound, under paragraph 152. The whole question now in controversy turns upon the proper construction of the words "sheet steel in strips" in the second proviso of paragraph 148. There appeared before the board of general appraisers three witnesses, who

testified generally as to the commercial designation, and process of manufacture, of cold-rolled steel, sheet steel, and sheet steel in strips. The board of general appraisers, pursuant to an order of the court, made a return of the record and evidence, together with a statement of the facts involved and of their decision; whereupon the court made another order, referring the case to one of the appraisers to take and return such further evidence as might be offered by the petitioner or the collector. In pursuance of this order, the testimony of several additional witnesses was taken and returned to the court. I think the following conclusions of fact may be fairly drawn from the evidence: First. The steel in controversy had no fixed commercial designation on October 1, 1890. Various terms are employed by witnesses in describing it. It is called "cold-rolled strips," "strip steel," "cold-rolled clock-spring steel," "cold-rolled steel," "a strip," "common cold-rolled cast steel," "cold-rolled steel in strips," "sheet steel in strips," and "sheet steel." Second. Among merchants and importers there was, on October 1, 1890, no steel product which was specially denominated as "sheet steel in strips." Strips cut or sheared from sheet steel were dealt in by the trade to a limited extent, but they do not seem to have been imported in the form of strips, nor to have had any settled commercial designation. Third. The term "sheet steel" was known among merchants and importers on October 1, 1890, as designating a well-understood article in commerce, namely, a form of steel not less than 8 inches in width, not exceeding 12 feet in length, hot rolled, and produced in a sheet mill. Fourth. All the witnesses testified that the steel in question would not be known among traders and importers as "sheet steel in strips," because it is cold rolled, and from 100 to 250 feet in length. The only witness who qualifies in any way this statement is Mr. Moen, who says it was spoken of by himself and the men in his employ as "sheet steel" or "sheet steel in strips;" but he at the same time declares that it was sold to his company as "cold-rolled spring steel," and that it was known "in common usage" as "strip steel."

It is contended on behalf of the United States that, as the steel in controversy had no clearly established commercial designation on October 1, 1890, and the term "sheet steel in strips," in paragraph 148, had no specific commercial meaning at that time, congress must have intended to have used the words "sheet steel in strips" in their ordinary sense, and that, as so interpreted, the words aptly describe the steel in question. The word "sheet," it is said, signifies, in ordinary usage—First, thinness; secondly, breadth; and, if the qualifying words "in strips" be added, there is eliminated the characteristic of width, leaving unaffected the characteristic of thinness, and that, as thus construed, the whole expression means a thin, narrow piece of steel of any length. On the other hand, it is urged by the importer that the steel in question could not have been intended by congress to be classified as "sheet steel in strips," because it was never recognized among traders and importers as sheet steel in any form, but always as a steel product which was cold rolled in a strip form, whereas sheet steel, whether in strips or

not, was always hot rolled, produced in a sheet mill, and never more than 12 feet in length; and because congress, in the prior tariff act of 1883, (22 Stat. 499,) uses the word "strips" in the steel clause without the qualifying word "sheet;" that to construe the term "sheet steel in strips" in the present act to include the import in controversy is to entirely ignore the well-known and recognized commercial meaning of "sheet steel;" that it is, in effect, to eliminate the word "sheet" from the statute, and to construe the sentence as if it read "steel in strips, of whatsoever width, twenty-five one-thousandths of an inch thick, or thinner." The addition of the word "sheet" before "steel" makes the meaning of the expression "sheet steel in strips" doubtful, and I do not think the connecting words in the paragraph, "whether drawn through dies or rolls, untempered or tempered, of whatsoever width, twenty-five one-thousandths of an inch thick or thinner," help the contention of either side in the present controversy, or assist the court as to the proper construction of this paragraph. When the question of a tariff law is one of doubt, that doubt must be resolved in favor of the importer. The intention of congress to impose a higher rate of duty should be expressed in clear and unambiguous language. Twine Co. v. Worthington, 141 U. S. 468, 474, 12 Sup. Ct. 55; U. S. v. Isham, 17 Wall. 496; Hartranft v. Wiegmann, 121 U. S. 609, 7 Sup. Ct. 1240; Gurr v. Scudds, 11 Exch. 190.

It seems to me that this case comes clearly within this rule. The decision of the board of general appraisers is reversed, and it is determined by this court that the several lots of steel covered by said decision should be classified under paragraph 146 of the tariff act of October 1, 1890, as steel in forms and shapes not specially provided for in said act, valued above four cents, and not above seven cents, per pound, and subject to a duty of two cents per pound, and not subject to an additional duty under paragraph 152 of said act.