## DETROIT FISH CO. v. UNITED STATES.

(Circuit Court, E. D. Michigan. March 18, 1901.)

1. CUSTOMS DUTIES—CLASSIFICATION—FISH—OWNERSHIP.

An American corporation imported fish caught in Canadian fresh waters by a Canadian corporation, which in catching the fish used nets which were bought by the former corporation, and leased to the latter for a period covering the life of the nets, and for a sum much less than their value. Held, that the importing corporation "owned" these nets, within the contemplation of paragraph 571, Tariff Act Oct. 1, 1890, c. 1244, § 2, Free List (30 Stat. 606), providing for the free entry of "fresh or frozen fish (except salmon), caught in fresh waters * * * with nets or other devices owned by citizens of the United States," and that the fish thus caught were free of duty under said paragraph.

On application by the importers to review a decision (G. A. 1,271) of the Board of General Appraisers, which affirmed the assessment of duty by the collector of customs at the port of Detroit on importations made November 25 and December 7, 1891, and January 2 and 5, 1892.

125 F.—51

C. E. Warner, for importers.

J. V. D. Willcox, Asst. U. S. Atty.

SWAN, District Judge. The entries of fish upon the dates stated in the title of this cause were made at Detroit by the Detroit Fish Company, a corporation organized May 14, 1891, and existing under the laws of the state of Michigan, for the purpose of carrying on the business of fishing, and buying and selling fish, nets, and other property used in the business. The appellant claims that the fish were entitled to free entry under the act of October 1, 1890, c. 1244, 26 Stat. 567, entitled "An act to reduce the revenue and equalize duties on imports and for other purposes." By section 2 of that act a "free list" is created, and by paragraph 571 under said section (Free List, c. 1244, 30 Stat. 606) "fish, the product of American fisheries, and fresh or frozen fish (except salmon), caught in fresh waters by American vessels, or with nets or other devices owned by citizens of the United States," are entitled to free entry. The collector of customs held otherwise, and assessed duty upon the entries, "for the reason that the ownership of the nets with which these fish were caught does not seem to be the ownership contemplated by law." The duties were paid by the appellant under protest. The Board of Appraisers found that the fish were not salmon; that they were taken with nets, boats, and other devices, all of which, with the exception of the nets, were admittedly the absolute property of the Manitoba Fish Company; that the nets were bought by citizens of the United States, who are the stockholders of the Detroit Fish Company, and although of greater value than $1,000 were leased by the purchasers or by the Detroit Fish Company for the season of the year 1891 for the sum of $1,000; that during the term of the said lease the Manitoba Fish Company had the exclusive possession and control of the nets; that the stockholders of both of said companies are substantially the same, the Detroit Fish Company receiving and disposing of the product of the Manitoba Fish Company. As conclusion from these and minor facts not herein recited, the board held as follows:

"Nets may be owned by citizens of the United States who may employ other persons who are aliens to fish with them, yet the nets would still be in the lawful possession and control of the United States citizen; but if such nets, by a contract, bargain, or lease, are put into the possession and control of an alien, so that for a given period such alien has the absolute possession and control of the same, especially if the time is a period covering the existence of the nets, in our opinion the possible reversionary interest in the United States citizen would not be the condition contemplated by a fair construction and application of the word 'owned' as used in paragraph 571. The supposed ownership by United States citizens in this case appears to us to be but a colorable one at best, adopted to evade payment of duty upon fish caught by the Manitoba Fish Company, and upon the facts we hold that the nets with which the fish aforesaid were taken were not 'owned' by citizens of the United States, within the meaning of paragraph 571 of the new tariff. The protests are overruled, and the action of the collector affirmed."

The facts in this case are not in dispute. No evidence was submitted in support of the findings and conclusion of the Board of Appraisers except that of the appellants. From this it clearly appears

that the nets with which the fish were caught were owned by the Detroit Fish Company, which had loaned them to the Manitoba Fish Company, by which the fish were caught in Ontario. The stockholders of the Detroit Fish Company, all citizens of the United States, together with Messrs. Reeves and Gautier, citizens of Canada, composed the Manitoba Fish Company. There is no evidence contradicting or impeaching the claim of the appellant that the fish imported were caught with the nets leased by the appellant to the Manitoba Fish Company, except the inference drawn by the appraisers from the fact that the stockholders of the Detroit Fish Company were also stockholders in the Manitoba Fish Company, and the further fact that the nets were leased to the latter for a rental of $1,000 per annum, though their value largely exceeded that sum, and their life was, at most, a year. Neither is there any evidence in the return of the Board of Appraisers that any other devices than these nets were used to catch the fish imported.

While it is possible that the lease of the nets was intended and executed for the purpose of exempting from duty fish caught with them by the Manitoba Fish Company, there is nothing in the language of paragraph 571 which prohibits that purpose or its accomplishment. It is patent that the lease did not divest the owner of the nets of the title to the property, but only transferred its use and possession for the term of the demise. There is nothing in the statute warranting the conclusion of the Board of Appraisers that the possession and control of the nets by an alien, under a contract, bargain, or lease, divests the reversionary interest of the owner, or in any degree impairs his title to the property.

While it is true that the Circuit Court, upon an appeal from the determination of the Board of Appraisers, should not disturb the finding of the latter upon conflicting testimony, especially in those cases where the board has seen and heard the witnesses, and had opportunity to judge of their intelligence and credibility, yet where these conditions do not exist, and the conclusion reached by the board is clearly a misconstruction of the law, or without evidence in its support, or disregards the great weight of the evidence, it is the duty of the court to disregard it. In re Van Blankensteyn, 56 Fed. 474, 5 C. C. A. 579; Morris European & Express Company v. U. S. (C. C.) 94 Fed. 643.

There is no evidence whatever that appellant's title to the nets was "colorable," or adapted to evade payment of the duty on fish caught by the Manitoba Fish Company. The construction of paragraph 571 compelled by its language acquits appellant of any purpose of evasion.

A statute must be judged by a fair construction of its language, and if that fails to suggest that the Congress intended to prohibit the lease to a foreigner of nets owned by a citizen of the United States, or to qualify the word "owned," it is not the province of the Board of Appraisers or of the court to amend the act by construction. In re Schallenberger (C. C.) 72 Fed. 491. No possible construction of paragraph 571 of the act of 1890 evinces either intent. The rule is that where there is a serious ambiguity in the language of a law imposing

duties, or it is open to vague or doubtful interpretation, the construction of the law should be in favor of the importer. American Net & Twine Co. v. Worthington, 141 U. S. 468, 12 Sup. Ct. 55, 35 L. Ed. 821.

It is not necessary, however, to invoke this rule of construction. The language used admits of but one meaning. There were no limitations in the act of 1890 upon the right of free importation of fish (except salmon), other than the requirement that they must have been "caught with nets or other devices owned by citizens of the United States." By the act of July 24, 1897, c. 11, § 2, Free List, par. 555, 30 Stat. 198 [U. S. Comp. St. 1901, p. 1683], a free list is provided which includes "fish, fresh, frozen or packed in ice, caught in the Great Lakes or other fresh waters by citizens of the United States." Noting this change from the language of paragraph 571 of the act of 1890, Judge Coxe, in Lake Ontario Fish Company v. U. S. (C. C.) 99 Fed. 551, comparing these two paragraphs, said of the latter: "The nets and devices being owned by the importer, it is probable that fish taken in such nets would be entitled to free entry if the paragraphs of the previous acts were in force." This intimation is well founded, and expresses the true construction of paragraph 571, Free List, § 2, c. 1244, Act 1890, 30 Stat. 606. The finding and conclusions of law of the Board of Appraisers are reversed, with costs.

Judgment will be entered in favor of the appellant for the duties paid on these importations, with costs to be taxed.