UNITED STATES v. BOAK FISH CO.

(Circuit Court, D. Minnesota, Third Division. May 12, 1906.)

No. 115 (1,735).

CUSTOMS DUTIES—MEASUREMENT—"QUART"—DRY MEASURE—FOXBERRIES IN WATER.

As to foxberries in barrels, with water added to act as a cushion, so as to prevent crushing, *held* that, in assessing the duty "per quart," provided in paragraph 262, Tariff Act July 24, 1897, c. 11, § 1, Schedule G, 30 Stat. 171 [U. S. Comp. St. 1901, p. 1651], the dutiable quantity should be ascertained by the use of the dry quart and not the liquid quart.

On Application for Review of a Decision of the Board of United States General Appraisers.

Charles C. Houpt, U. S. Atty.
S. C. Olmstead, for importers.

AMIDON, District Judge. This is an appeal by the United States from the decision of the Board of General Appraisers (G. A. 6,080, T. D. 26,512), touching an importation of foxberries at the port of St. Paul, Minn., by the Boak Fish Company. The berries are imported in barrels. After the barrels are filled with the berries, water is added, so as to make a cushion between the berries, and prevent them from crushing by their own weight in the process of shipment. The function of the water is not to chemically change the berry or to act as a preservative. It serves no purpose but to protect the berries against crushing. Boak et al. v. United States (C. C. A.) 125 Fed. 599. At the port of entry the water is first drawn off, and the quantity of the berries is then gauged and the number of cubic inches ascertained. The berries are dutiable under paragraph 262, Tariff Act July 24, 1897, c. 11, § 1, Schedule G, 30 Stat. 171 [U. S. Comp. St. 1901, p. 1651], at the rate of one cent a quart. The collector at St. Paul measured them by the liquid quart, which contains 57¾ cubic inches, whereas the importer insisted that they ought to be measured by the quart

of dry measure, which contains 67.2 cubic inches. The Board of General Appraisers sustained this position of the importer, and reversed the action of the collector. The government now appeals against the decision of the Board of General Appraisers.

The statute in no way defines the kind of quart by which the berries should be measured, nor is there any other statute of the United States prescribing what substances shall be measured by dry measure and what by liquid measure. In fact, Congress has failed to establish a uniform system of weights and measures, such as it is authorized to do under section 8, art. 1, of the Constitution. Those matters have, in the main, been left to executive practice. In 1830 the Secretary of the Treasury was directed to cause a comparison to be made of the standards of weights and measures in use at the principal customs houses. As a result of that investigation, large discrepancies were disclosed in the weights and measures in use at the different points. Thus, while the Constitution provides that all duties, imposts, and excises shall be uniform throughout the United States, and while the statute in that respect was uniform, still in practice a wide diversity was found. To correct this evil Prof. Ferdinand Hassler, a scholarly German scientist and the first superintendent of the coast survey, was, by resolution of the Senate, directed to prepare for the Treasury Department standards of weights and measures having the necessary degree of precision. After some years of investigation, such standards were prepared, and copies thereof distributed to the several ports of entry. For the purpose of further encouraging uniformity of weights and measures, the Secretary of the Treasury was, in 1836, directed to furnish copies of the standards thus prepared to the Governors of the several states, and in 1881 a similar provision was made for the furnishing of copies of the standards to the several agricultural colleges. In this way, while the standards have failed to attain scientific accuracy, they have been sufficient for practical purposes, and have steadily tended to build up uniformity in weights and measures. I am not aware of any statute or regulation of the Treasury Department prescribing what articles shall be measured by the standards of dry measure and what by the standards of liquid measure. This has evidently been left largely to business experience. In the statutes of the several states, however, specific directions may be found upon this subject. I cite by way of example the statutes of California. Section 3209 of the Political Code adopts as the standards for that state the standards furnished by the United States government, and specifies the contents of each.

Section 3216 provides:

"The standard gallon and its parts are the units or standards of measure of capacity for liquids, from which all other measures of liquids are derived and ascertained."

Section 3218 provides:

"The standard half bushel is the unit or standard measure of capacity for substances that are not liquids, from which all other measures of such substances are derived and ascertained."

Similar provisions will be found in the statutes of other states. These enactments leave no doubt that all articles except liquids ought to be measured by dry measure. The foxberries would, therefore, be properly measured by dry measure. In view of the character of the article, this would seem to be the only sensible standard to adopt. The testimony of several retail grocers in St. Paul was taken by the government in this case, from which it appears that only one quart measure is used by them in their establishments. The evidence leaves it doubtful whether that measure is the dry measure or the liquid measure as to its capacity. Such evidence, however, is of no practical worth in determining the question that is under consideration. The fact is that in recent times nearly all articles that we formerly measured by the dry measure quart are now put up in boxes or other receptacles in which they are delivered to the purchaser.

But if the question raised by this appeal were not thus plain, as I think it is, there is another rule by virtue of which the decision of the Board of General Appraisers ought to be affirmed. It is the settled rule of the courts that, wherever any ambiguity is left in tariff statutes, the doubt ought to be resolved in favor of the importer. Hartranft v. Wiegmann, 121 U. S. 609, 7 Sup. Ct. 1240, 30 L. Ed. 1012; Twine Co. v. Worthington, 141 U. S. 468, 12 Sup. Ct. 55, 35 L. Ed. 821.

The decision of the Board of General Appraisers is therefore affirmed.