SEARS, ROEBUCK & Co. *v.* UNITED STATES (No. 4167) [1]

[1] C. A. D. 11.

United States Court of Customs and Patent Appeals, October 31, 1938

*Barnes, Richardson & Colburn* (*Joseph Schwartz* of counsel) for appellant.
*Webster J. Oliver*, Assistant Attorney General (*Charles D. Lawrence*, Special Assistant to the Attorney General, and *Marcus Higginbotham, Jr.*, special attorney, of counsel), for the United States.

[Oral argument October 3, 1938, by Mr. Richardson and Mr. Oliver]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges

BLAND, Judge, delivered the opinion of the court:

Certain shoe brush sets, each set consisting of a dauber and a brush, were imported by appellant at the port of Seattle and entered for consumption at the port of Chicago. The collector, at the latter port, classified said merchandise as dutiable under paragraph 1506, Tariff Act of 1930, and assessed the same with duty at 1 cent each and 50 per centum ad valorem as "other toilet brushes."

The importer protested the said classification and assessment of duty and claimed that the brush sets were dutiable under the provision of said paragraph 1506 as "all other brushes, not specially provided for" at 50 per centum ad valorem.

The United States Customs Court, First Division, overruled the protest, and from its judgment importer has appealed here.

The pertinent provisions of the paragraph involved follow:

PAR. 1506. * * * other tooth brushes and other toilet brushes, 1 cent each and 50 per centum ad valorem; all other brushes, not specially provided for, 50 per centum ad valorem; * * *.

At the trial of the case below, no evidence was introduced except that relating to the identification of the sample, and the sample itself, which is Collective Exhibit 1. Counsel in the case stipulated that:

Collective Exhibit 1, the merchandise covered by the protest at bar, consists of a set of a dauber and a brush used for the purpose of polishing and shining shoes; that is, the dauber is used for the purpose of applying the polish, and the brush for the purpose of shining the shoe.

In deciding the case the trial court said:

* * * We have the briefs before us, but we are of the opinion that there are not sufficient facts in the record upon which we might base a judgment determining whether the brushes at bar are or are not toilet brushes. In our view it is not for this Court to say, upon a record such as the foregoing, what classification brushes like those in issue should take. Whether the process of dressing one's self, to which the term "toilet" has been extended, includes the necessary conditioning of one's clothes, is not apparent from the definitions given by lexicographers of the words "toilet" and "dress."

The burden rested upon the plaintiffs of proving, first, that the brushes at bar are not included within the category of toilet brushes, and, second, that its own claim was well founded, and since in our view that burden has not been met the protest must be overruled.

As we understand the issue presented to the lower court and presented here, it is whether or not the common meaning of the term "other toilet brushes" in paragraph 1506 embraces the importation at bar, and whether or not it was the intent of Congress by the use of said language to require classification of such merchandise thereunder. There was in the lower court and is here no claim made that "toilet brushes" has any commercial meaning differing from its common meaning.

As before stated, the importer, at the trial, introduced a sample of the merchandise, an examination of which discloses it to be of the character ascribed to it in the stipulation. We think it was the duty of the trial court, as it is our duty now, upon the sample and the stipulation, to construe the controverted provision and decide the issue presented in such a manner as to direct the proper classification of the merchandise in controversy.

The term "toilet brushes" first appeared in the Tariff Act of 1922, and from there it was carried into the Tariff Act of 1930. Throughout the history of tariff legislation the terms "toilet articles," "toilet soap," "toilet powder," and "toilet water" have been frequently used, but decisions relating to said terms are not especially helpful here, the context of the provisions in which they were used and the circum-

stances connected with their use differing materially from those of the provision in controversy here.

The lexicographers assign several meanings to the noun "toilet." In Funk & Wagnalls New Standard Dictionary it is referred to as being "a dressing-table cover"; "a bag for night clothes, soiled linen, etc."; "a table provided with looking-glass and other articles used in the process of dressing"; "*Surg.* The cleansing of an organ or part after childbirth or an operation." The most common definition found in such authorities is, in Funk & Wagnalls New Standard Dictionary, as follows:

1. The process of dressing one's self, formerly especially of dressing one's hair.

Clearly the term "toilet" has a meaning which includes the process of cleansing one's person, and possibly the term might be used properly in such a way as to include acts which did not necessarily pertain to the physical person of the individual but to his dress or clothes. Opposition to the conclusion that the common meaning of the term "toilet" is broad enough to include acts in connection with one's clothing or dress has led to the suggestion on the part of the appellant as follows:

* * * By the same reasoning a cleaning fluid used to remove spots from a woman's dress or a man's tie, would be a toilet article. By the same token, a household cleaning preparation used to clean leather gloves or suede shoes would become a toilet preparation. * * *

In *United States* v. *P. B. T. Williams*, 21 C. C. P. A. (Customs) 243, T. D. 46776, where brushes known as neck dusters were involved, this court quoted the last above-recited definition of the term "toilet" and held that the neck dusters, although used by barbers in a barber shop, were toilet brushes. The brushes there, however, unlike the brushes at bar, came in contact with the person of the individual upon whom they were used.

The same issue as was presented in the *Williams* case, *supra*, was again presented to this court in *P. B. T. Williams* v. *United States*, 23 C. C. P. A. (Customs) 328, T. D. 48194. In the latter *Williams* case, we adhered to the views expressed in the first *Williams* case, *supra*. The issue in both cases, as presented to this court, involved a consideration as to whether or not the term "toilet brushes" embraced only such brushes as were used by the individual himself in making his toilet or whether the term might include those used by a barber upon a customer. While these cases are cited and discussed in the instant appeal, we can find in them little if anything that is in point in the decision of the issue at bar.

We are of the opinion that it is unnecessary for us to hold that the common meaning of the term "toilet brushes" is or is not sufficiently broad to cover the importation at bar, since we are of the

opinion, for reasons hereinafter stated, that Congress, when it used the term, did not use it with the intent to include thereunder the shoe brushes and daubers involved in this appeal. We are of the opinion that the common meaning of the term is involved in such doubt as to justify a resort to legislative history in order that we may arrive at the legislative intent.

In the Tariff Act of 1913 there was no provision for toilet brushes except in paragraph 336 thereof, where they were included under the term "brushes." When the Tariff Act of 1922 was being prepared, domèstic brush manufacturers and importers made various representations to the Committee on Ways and Means with reference to the need or lack of need of a change in tariff classification respecting the different kinds of brushes. The representations so made as to what kind of brushes were included within the term "toilet brushes" for the most part suggested that brushes such as hat brushes, clothes brushes, shoe brushes, and cleansing and other household brushes were not embraced by that term. However, it is fair to say that there was some conflict on this subject in the views expressed by the different interested persons.

The United States Tariff Commission had made extensive investigations on the subject of brushes and the brush industry and, in 1921, published Tariff Information Survey N-4, entitled "Bristles and Brushes." This survey was called to the attention of Congress by the brush importers and no doubt was before the committees of Congress which prepared the bill which became the Tariff Act of 1922. In connection with its investigations and recommendations the term "toilet brushes" is frequently used. Various kinds of toilet brushes are spoken of. For instance, the survey states (page 19):

Beginning with July 1, 1918, the following classification is followed in official statistics: Toilet brushes comprising tooth, hair, nail, or hand; all other brushes; feather dusters; and hair pencils.

Toilet brushes.—Foreign competition in the past has been almost entirely on toilet brushes. * * *

Again at page 25 it is stated:

American producers of household, shoe, horse, mill, or machine brushes, and a great variety of special brushes, have little or no foreign competition. The small imports of these brushes are accounted for by the fact that some of the brushes can be made by machine, a method in which Americans excel, while others are of such peculiar shape and design that the demands of the trade can be more quickly supplied by the American manufacturer than by the importer, who is not apt to carry an extensive line of special brushes. [Italics ours.]

The compiled statistics, above referred to, relating to toilet brushes did not include shoe brushes.

In the Summary of Tariff Information, 1920, prepared by the Tariff Commission for the use of the Committee on Ways and Means

of the House of Representatives, at page 522 relating to this subject, it was said, under the heading "General Information":

Brushes may be divided into (1) brushes for toilet purposes—hair brushes, military brushes, shaving brushes, etc.; (2) brushes for artists and painters; (3) all other, such as clothes, hat, fruit-cleaning, and machine brushes. [Italics except first word ours.]

In the Summary of Tariff Information, 1921, which was likewise prepared by the Tariff Commission for the use of the Committee on Finance of the Senate, under the subject of "BRUSHES" appears the following at page 1102:

Description and uses.—Brushes may be divided into three classes: (1) Toilet, tooth, hair, nail, hand brushes, etc.; (2) painters' and artists' brushes; and (3) all other brushes, including feather dusters.   *   *   *

At the hearings on the bill, a Mr. Gibson, representing an importers' association, appeared before the House Ways and Means Committee and subdivided the term "brushes" by calling attention to what the Tariff Commission had reported, and summarized the same by the use of the following language (General Tariff Revision, Hearings H. of R. (1921) part 5, p. 3143):

*   *   *   The interest that prompts this recommendation relates solely to toilet brushes.   No reason is apparent for changing the present classification by which paint, household, and other brushes are included in the same class with toilet brushes.   Importations of these other brushes have always been negligible. This is a question, however, for the judgment of your committee and with which we have no concern.

Brushes of all kinds are included in a single class under the present and all previous tariff laws, but for the purposes of analysis, reference is made to three main kinds of brushes recognized by the United States Tariff Commission, as follows: Brushes for toilet purposes, as hair, tooth, nail, bath, and shaving brushes; brushes for painters and artists; and brushes for cleaning and polishing, as shoe, scrub, stove, and special brushes.   *   *   *   [Italics ours.]

Mr. Treadway of the Ways and Means Committee asked Mr. Gibson the following question and was given the following answer:

Mr. TREADWAY. How do you define toilet brushes?
Mr. GIBSON. They are brushes for toilet purposes, as hairbrushes, toothbrushes, bath brushes, and shaving brushes.   *   *   *

In view of the fact that subsequent to the above-referred to legislative history Congress for the first time separated brushes for duty purposes and used the words "toilet brushes," we think the foregoing considerations suggest that Congress, when it used the term "toilet brushes" did not intend to use it in a sense broad enough to include shoe brushes.

Again, in the Summary of Tariff Information, 1929 (which was before the Committee on Ways and Means when the bill which became the Tariff Act of 1930, under which the instant importation was made, was being prepared) it was stated (page 1918):

## BRUSHES

DESCRIPTION AND USES.—According to uses, brushes may be classified into the following groups: (1) toothbrushes; (2) other toilet brushes, such as hair, manicure, bath, and shaving; (3) paint, varnish, and artists; (4) household and industrial for cleaning and other purposes.  *  *  *

To ascertain the legislative intent is the master rule of construction. *United States* v. *Clay Adams Co., Inc.*, 20 C. C. P. A. (Customs) 285, T. D. 46078. The legislative intent is the lodestar of judicial decision. *Schwabacher & Co., Inc.,* v. *United States*, 22 C. C. P. A. (Customs) 496, T. D. 47484.

It is frequently a difficult task for those called upon to interpret the meaning of terms in tariff statutes to ascertain the exact sense in which Congress used such terms. The courts, particularly in cases involving customs duties, have sought aid from many different kinds of extrinsic facts, when regarded as safe to so do, in order to determine the legislative intent. A notable case of this character is *American Net & Twine Co.* v. *Worthington*, 141 U. S. 468, where the contest was between two paragraphs the language of which was plain. Both covered the imported article. The court went to the legislative history of the provision and stated:

While the statements made and the opinions advanced by the promoters of the act in the legislative body are inadmissible as bearing upon its construction, yet reference to the proceedings of such body may properly be made to inform the court of the exigencies of the fishing interests and the reasons for fixing the duty at this amount.  *  *  *

Here as there, though the language used is plain, the legislative intent is obscure. Chief Justice Marshall, in *United States* v. *Fisher*, 2 Cranch 358, 386, said:

*  *  *  Where the mind labors to discover the design of the legislature, it seizes everything from which aid can be derived;  *  *  *

Words frequently have both broad and narrow common meanings, and in an attempt to arrive at congressional intent the selection of either ofttimes may lead to erroneous and unjustifiable conclusions. Under such circumstances, it is important to seek light from other sources, if they are available and may be safely relied upon. In *Norwegian Nitrogen Products Co.* v. *United States*, 288 U. S. 294, 317–319, the court, in an opinion by Mr. Justice Cardozo, determined what Congress meant by the term "hearing" in the Tariff Act of 1930 in connection with the duties of the Tariff Commission. It discussed at great length "external aids" consisting of history, the history of the legislation, administrative practice, sections related to those in which the term appeared, analogy to other proceedings, and numerous other considerations, and said:

We are not unmindful of cases in which the word "hearing" as applied to administrative proceedings has been thought to have a broader meaning. All depends upon the context.  *  *  *

The tokens of intention set down in this opinion have a force in combination that is denied to any one of them alone. They impel us to the holding that * * *.

By the foregoing, we do not mean to hold that all statements made in hearings before Congress or the committees thereof during the preparation of a tariff bill or references made to it by the Tariff Commission are always safe guides for use of the courts in deciding issues relating to customs duties, nor that they are always controlling of decision, but under the circumstances at bar, such as have been recited, *supra*, we think the intent of Congress in using the term under consideration is strongly suggested and that Congress in subdividing the term "brushes" used in former acts, did so in pursuance of representations made to it by the Tariff Commission, that it subdivided the term substantially in accordance with the suggestion made to it by said commission, and that it did not intend to include shoe brushes in that portion of the paragraph devoted to toilet brushes.

It is our view that the collector improperly classified the merchandise at bar and that the trial court fell into error in not sustaining the protest of the appellant. The judgment of the United States Customs Court is *reversed* and the cause is *remanded* for further proceedings not inconsistent with the views herein expressed.

GARRETT, Presiding Judge, and JACKSON, Judge, concur in the conclusion.