(C. D. 1527)

ORBIS PRODUCTS CORP. v. UNITED STATES

United States Customs Court, First Division

(Decided June 3, 1953)

*John D. Rode* for the plaintiff.
*Charles J. Wagner*, Acting Assistant Attorney General (*Joseph E. Weil*, special attorney), for the defendant.

Before OLIVER and MOLLISON, Judges

MOLLISON, Judge: The merchandise the subject of this protest is described on the invoice as "Fractionated White Camphor Oil SG 1070," and was assessed with duty at the rate of 7½ per centum ad valorem under the provision in paragraph 58 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, T. D. 51802, for nonalcoholic essential or distilled oils, not specially provided for. The protest claim is for free entry under the provision in paragraph 1731 of the same act for camphor oil.

There does not appear to be any question but that the involved oil is a fraction obtained by distillation of crude camphor oil, and it also appears to be without dispute that crude camphor oil is obtained by distillation of parts of the camphor tree and the removal of the camphor therefrom.

Nor does there appear to be any question but that there is more than one camphor oil of commerce, all, except the crude camphor oil, being fractions obtained by distillation of crude camphor oil.

The record shows that at and about the time of the passage of the Tariff Act of 1930 the fraction of camphor oil here involved, i. e., "SG 1070" (the designation referring to the fact that its specific gravity at a certain temperature was 1.070), was known and sold in the trade and commerce of the United States as "oil of sassafras, artificial." However, at some time subsequent to the passage of the Tariff Act of 1930, and possibly 5 to 10 years prior to the date of trial, the said oil became known and was sold in the trade and commerce of the United States *also* as "camphor oil SG 1070," or under designations indicating that it was a fractionated camphor oil with a specific gravity of 1.070.

While the issue of commercial designation became the subject of discussion at the trial of the case and is touched upon in the briefs filed by counsel, it does not appear that either side has raised the issue by either seeking to establish, or by actually establishing, that in the trade and commerce of the United States there existed for the tariff term "camphor oil" a meaning different from the common meaning of the said term. Insofar as the tariff term "camphor oil" is concerned, therefore, the rule of statutory construction known as the rule of commercial designation does not appear to be a factor in the case.

The term "camphor oil" is an *eo nomine* designation, and the general rule applicable to such designations, in the case of merchandise known to commerce at the time of the passage of the tariff act, is that the meaning thereof is to be determined as of the effective date of the tariff act. *Wilbur-Ellis Co. et al.* v. *United States*, 18 C. C. P. A. (Customs) 472, T. D. 44762.

The record establishes that merchandise identical with that in issue was known to commerce at and prior to the passage of the Tariff Act of 1930 in which the term "camphor oil" appears. Therefore, if at that time the term "camphor oil" embraced merchandise such as that at bar, decision must be in favor of the plaintiff, whereas if, at that time, the said term excluded merchandise such as that at bar, decision must be in favor of the defendant.

The evidence offered on the point (which evidence, it should be noted, is of advisory effect only, being on the subject of the common meaning of the tariff term which is a question of law for the court to determine) is to the effect that at and about the time of the enactment of the Tariff Act of 1930 the oil in question was known and sold under the name of oil of sassafras, artificial. If the court were limited only to a consideration of the testimonial evidence summarized as aforesaid, it might be possible to infer therefrom that, being known and sold at the time in question as oil of sassafras, artificial, such merchandise was *not* also known as camphor oil.

However, as hereinabove mentioned, this case involves the common meaning of the term "camphor oil" and as that is a question of law for the court to determine from its judicial knowledge, resort may be had to extrinsic aids to assist the court in its determination.

Thorpe's Dictionary of Applied Chemistry, 3d edition, 1918, Vol. III, p. 736, shows the following under the heading "camphor oil":

A by-product in the manufacture of camphor from the wood of the camphor tree, *Cinnamomum Camphora* (Nees & Eberm.) (*N. O. Lauraceae*), found in China, Japan, and Formosa. The oil varies considerably in character, but may be divided into two distinct classes, (1) the light fractions consisting principally of terpenes, (2) the heavy fractions containing more or less safrole, which is largely used in the preparation of heliotropin: sp. gr. (1) 0.860–0.950, (2) 0.950–1.100 * * *.

It will be seen, therefore, that this work, in existence prior to the effective date of the Tariff Act of 1930, indicates that a fraction of camphor oil of a specific gravity of 1.070, such as that here at bar, was within the definition of "camphor oil."

Similarly, The Chemistry of Essential Oils and Artificial Perfumes, by E. J. Parry, 4th edition, 1921, Vol. 1, under the heading of "Oil of Camphor," lists as one of "the general types of oil to be found in commerce" the following:

4. The very high boiling fractions, rendered nearly colourless by re-distillation, of specific gravity from 1.060 to 1.075, are sold as "artificial sassafras oil."

Under the heading of "Oil of Sassafras," at page 146 of the same work, the following is said:

* * * There are on the market, however, many samples of so-called "artificial sassafras oil" which are merely fractionated camphor oil, of specific gravity about 1.070.

The Volatile Oils, by Gildemeister and Hoffmann, 2d edition, 1916, Vol. II, p. 497, contains the following:

* * * Fractions of camphor oil, the specific gravity of which correspond to that of sassafras oil, are sold as "artificial sassafras oil."

It is certainly apparent from the foregoing that although oil such as that at bar was, at and prior to the passage of the Tariff Act of 1930, known and sold as artificial sassafras oil, nevertheless, the said oil was at the same time also known, recognized, and understood to be, in fact, a camphor oil. Under these circumstances, it can hardly be said that oil such as that at bar was, at the time here pertinent, excluded from the common meaning of the term "camphor oil." If it was not excluded from the said common meaning, it was within the common meaning, and the fact that it was at that time also known and sold under the name of artificial sassafras oil, which name is not used in the tariff act, will not exclude it from classification under the tariff designation "camphor oil."

Judgment will therefore issue sustaining the protest claim for free entry under paragraph 1731 of the Tariff Act of 1930.