**Slip Op. 04-57**

**United States Court of International Trade**

TIMBER PRODUCTS CO.,

               Plaintiff,

        v.

UNITED STATES,

               Defendant.

Before: Pogue, Judge

Court No. 01-00216

[Plaintiff's motion for summary judgment denied; judgment entered for Defendant.]

Decided: June 2, 2004

Sandler, Travis & Rosenberg, P.A. (Beth C. Ring) for Plaintiff.

Peter D. Keisler, Assistant Attorney General, Barbara S. Williams, Acting Attorney in Charge, Mikki Graves Walser, Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Michael W. Heydrich, Attorney, Of Counsel, Office of the Assistant Chief Counsel, U.S. Bureau of Customs and Border Protection, for Defendant.

**OPINION**

**Pogue, Judge**: This action is now before the Court on cross-motions for summary judgment. Plaintiff Timber Products Co. ("Plaintiff") challenges the classification by the U.S. Bureau of Customs and Border Protection ("Customs")[1] of certain entries of

---

[1]Effective March 1, 2003, the United States Customs Service was renamed the United States Bureau of Customs and Border Protection. See Homeland Security Act of 2002, Pub. L. No. 107-296 § 1502, 2002 U.S.C.C.A.N. (116 Stat.) 2135, 2308;

plywood from Brazil under subheading 4412.14.30 of the Harmonized

Tariff Schedule of the United States ("HTSUS"), 19 U.S.C. § 1202

(1994),[2] a basket provision for plywood with at least one outer ply

of nonconiferous wood.   Subheading 4412.14.30, HTSUS (1997).[3]

Plaintiff contends that the entries should be classified under

subheading 4412.13.40, HTSUS,[4] which explicitly provides, among

---

Reorganization Plan Modification for the Department of Homeland
Security, H.R. Doc. No. 108-32, at 4 (2003).

   [2]Subheading 4412.14.30, HTSUS, reads:

   4412              Plywood, veneered panels and similar
                     laminated wood (con):
                             Plywood consisting solely of sheets of
                             wood, each ply not exceeding 6 mm in
                             thickness (con):
   4412.14                   Other, with at least one outer ply
                             of nonconiferous wood:

       . . .

   4412.14.30                          Other.

Subheading 4412.14.30, HTSUS (1997).

   [3]The complaint alleges, and the answer admits, that the
subject entries of merchandise were imported in 1996 and 1997.
See Compl. of Timber para. 1; Answer of Customs para. 1.  The
Court uses the 1997 version of the HTSUS for the sake of
convenience; while it differs slightly from the 1996 version, it
does not differ in any way which makes for a difference in this
case.  Cf. heading 4412.13.30, HTSUS (1996), with heading
4412.13.40, HTSUS (1997).

   [4]Subheading 4412.13.40, HTSUS reads:

   4412              Plywood, veneered panels and similar
                     laminated wood:
                             Plywood consisting solely of sheets of
                             wood, each ply not exceeding 6 mm in
                             thickness:

other things, for plywood with at least one outer ply of "virola."

Id.  Although Plaintiff admits that it cannot show that the entries

consisted of plywood with at least one outer ply of wood from a

tree of the "virola" genus,[5] it claims a commercial designation for

the term "virola" which includes the merchandise at issue.

Plaintiff, however, has failed to produce sufficient evidence to

support either its asserted commercial designation or the

applicability of the asserted commercial designation to its

--------

| 4412.14 | Other, with at least one outer ply of nonconiferous wood: |
| | Not surface covered, or surface covered with a clear or transparent material which does not obscure the grain, texture or markings of the face ply: |

. . .

| 4412.13.40 | Other: |
| | With at least one outer ply of the following tropical woods: Dark Red Meranti, Light Red Meranti, White Lauan, Sipo, Limba, Okoumé, Obeche, Acajou d'Afrique, Sapelli, Virola, Mahogany, Palissandre de Para, Palissandre de Rio or Palissandre de Rose. |

Subheading 4412.14.30, HTSUS.

   [5]A "genus" is "[a] classificatory group comprehending a
number of species (sometimes a single species) possessing certain
common structural characteristics distinct from those of any
other group."  VI The Oxford English Dictionary 456 (2d ed.
1989).

merchandise under USCIT R. 56; therefore, Plaintiff's motion for summary judgment is denied, and judgment is entered for Defendant.

## BACKGROUND

Plaintiff imported the subject entries of plywood[6] from Brazil between 1996 and 1997. See Pl.'s Br. at 1. On its shipping and entry documents, it listed the merchandise as "Sumauma (C. Petanda) Plywood," "Faveira (Parkia spp.) Plywood," "Amesclao (T. Burseaefolia) Plywood," "Brazilian White Virola Rotary Cut Plywood,"[7] "White Virola Plywood," "White Virola (Virola spp.) Plywood," and "Edaiply Faveira (Parkia spp.)." Id. at 4-5.[8]

_____

[6]Plywood, for purposes of heading 4412, consists of three or more sheets of wood which are glued and pressed together. Harmonized Commodity Description and Coding System, Explanatory Note 44.12 (2d ed. 1996) at 681. Each sheet is known as a "ply." Id. At least with regards to Brazil, plywood is manufactured by mills which shave logs into sheets or veneers. See Pl.'s Mem. Supp. Mot. Summ. J. at 6-7 ("Pl.'s Br."). The mills attempt to match veneers by color, but the species of woods involved in making the plywood are considered irrelevant. Id. Thus, one piece of plywood may consist of various types of wood, and indeed, a single ply may consist of more than one type of wood. Id.; see also infra pp. 18-20.

[7]Plaintiff contends that "white virola" does not refer to any particular species of tree, but only to lighter colored wood of any of the species which it argues are commercially known as "virola." Pl.'s Stmt. Mat. Facts para. 10. Defendant agrees that the term denotes "lighter shades of wood," although not "regardless of the species." Def.'s Resp. to Pl.'s Stmt. Mat. Facts para. 10.

[8]The words in parentheses designate the scientific names of the species of tree which Plaintiff claims forms the outer ply of

Because these woods are not separately listed in the HTSUS, Customs

classified the entries under subheading 4412.14.30, HTSUS, as

plywood with at least one outer face of nonconiferous wood.  See

Complaint of Timber para. 6, Answer of Customs para. 6; cf.

subheading 4412.14.30, HTSUS, with subheading 4412.13.40, HTSUS.

Plaintiff contends, however, that "sumauma," the two species of

"faveira," and "amesclao,"[9] along with other woods, are known by a

definite, general, and uniform commercial designation in the U.S.

wholesale trade as "virola," and therefore ought to be classified

---

the imported plywood.  Scientific names are based on taxonomy, the hierarchy of biological classification comprised of kingdom, phylum, class, order, family, genus, and species.  See McGraw-Hill Concise Encyclopedia of Science and Technology 1847-48 (2d ed. 1989).  Commonly, species are referred to by a scientific name which includes two parts: the first initial or word designates the genus, the second word or abbreviation designates the species.  "Spp." stands for *species plurales*, indicating that all species of the given genus are referred to.

    Rather than giving the full scientific names, Plaintiff refers to "Sumauma (C. Petanda)," "Faveira (Parkia spp.)," "Amesclao (T. Burseaefolia)," and "Edaiply Faveira (Parkia spp.)" throughout its submissions as "sumauma, "faveira," and "amesclao."  See, e.g., Pl.'s Br. at 1 n.1, 5, 21.  The Court adopts this method of reference, for purposes of brevity only.

[9]It appears that the names "sumauma," "faveira," and "amesclao," were provided on the entry papers for the plywood at issue only for regulatory purposes, and not as a reflection of the true nature of the imported wood.  See Pl.'s Br. at 5, 8. Rather, Plaintiff appears to admit that there is no way of knowing whether the plywood at issue had one outer ply of any of these woods.  Because of the manner in which the plywood is created, it is highly improbable that one sheet would be made of a single species.  See id. at 7.  Any given shipment will contain numerous wood types.  See id. at 7-8.

as plywood with at least one outer ply of "virola."[10]

## STANDARD OF REVIEW

Under USCIT Rule 56, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  USCIT R. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  In

---

[10]In Russell Stadelman & Co. v. United States, the Court dealt with a challenge to the classification of similar merchandise under a previous, differently-worded version of the HTSUS.  See Russell Stadelman & Co. v. United States, 23 CIT 1036, 83 F. Supp. 2d 1356 (1999).  Rather than the term "virola," that version of the HTSUS employed the term "baboen."  See 23 CIT at 1046 n.11, 83 F. Supp. 2d at 1364 n.11.  In Russell Stadelman & Co., plaintiff claimed that plywood invoiced as having at least one outer ply of "sumauma," "faveira," or "mangue" should be classified as plywood with at least one outer ply of "baboen." See 23 CIT at 1037, 83 F. Supp. 2d at 1357.  The Court found that only certain woods of the genus "virola" were classifiable as "baboen," and thus that the subject merchandise was not embraced by the provision asserted by plaintiff.  See 23 CIT at 1037, 1046 n.11, 83 F. Supp. 2d at 1357, 1364 n.11.  The Court moreover found that plaintiff failed to prove a commercial designation for "baboen," as the proof it adduced related to identifying the merchandise as "virola," rather than as "baboen," which was the term actually used by the statute.  See 23 CIT at 1044-45, 83 F. Supp. 2d at 1363.
    The instant case differs from Russell Stadelman & Co. in that Congress has changed the wording of the tariff schedule to provide for plywood with at least one outer ply of "virola," rather than one outer ply of "baboen."  However, the majority of the deposition and affidavit testimony that plaintiff provides as proof of its asserted commercial designation for the term "virola" in this case was first provided to the Court in Russell Stadelman & Co..  See Pl.'s Br. at 3.

determining whether a genuine issue of fact exists, the Court reviews the evidence submitted drawing all inferences against the moving party. See United States v. Pan Pac. Textile Group Inc., 27 CIT __, __, 276 F. Supp. 2d 1316, 1319 (2003) (internal citation omitted); see also Matsushita Elecs. Indus. Co v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (internal citations omitted).

In a classification case, on factual issues, Custom's decision enjoys a presumption of correctness. See Universal Elecs. Co. v. United States, 112 F.3d 488, 493 (Fed. Cir. 1997). To overcome this presumption, a plaintiff must provide evidence that a reasonable mind could find sufficient to establish that Customs' decision is incorrect, see id. at 492, i.e., to avoid summary judgment against it, such a party must proffer evidence sufficient to enable a reasonable mind, drawing all inferences in that party's favor, to conclude that a substantial issue of material fact exists requiring trial. See, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (stating that summary judgment will not lie where a dispute about a material fact is genuine, such that a reasonable trier of fact could return a verdict for nonmoving party).[11] This obligation exists with respect to each element which is essential to a party's case. As is specifically relevant here,

---

[11]Similarly, a party facing a properly supported motion for summary judgment may not rest on mere allegations that a genuine issue of material fact exists. See USCIT R. 56(e), United States v. JICK (USA) Indus. Corp., 22 CIT 980, 981, 27 F. Supp. 2d 199, 200 (1998).

summary judgment must be entered against a party who fails to adduce the minimally necessary evidence on an element which is essential to its case, and upon which it would have the burden of proof at trial.  See Celotex Corp. v. Catrett, 417 U.S. at 322-23.

In the absence of genuine factual issues, the "'propriety of the summary judgment turns on the proper construction of the HTSUS, which is a question of law.'"  Toy Biz, Inc. v. United States, 27 CIT __, __, 248 F. Supp. 2d 1234, 1241 (2003) (quoting Clarendon Mktg., Inc. v. United States, 144 F.3d 1464, 1466 (Fed. Cir. 1998); Nat'l Advanced Sys. v. United States, 26 F.3d 1107, 1109 (Fed. Cir. 1994)).


**DISCUSSION**

This case primarily turns on Plaintiff's attempt to prove a commercial designation for the term "virola." The term "virola" is not statutorily defined.  The term appears in several provisions of the tariff schedule within Chapter 44, which deals with wood products generally.[12]  Chapter 44, HTSUS.  Some of these provisions

---

[12]In addition to subheading 4412.13.40, which covers plywood not exceeding 6 mm in thickness, with at least one outer ply of "virola," "virola" is referenced either by name or by way of subheading note 1 to Chapter 44 (infra note 13) in subheading 4403.49.00 (covering "[w]ood in the rough, whether or not stripped of bark or sapwood, or roughly squared . . . Other, of tropical wood specified in subheading note 1 to this chapter . . . Other"), subheading 4407.24.00 (covering "[w]ood sawn or chipped lengthwise, sliced or peeled, whether or not planed, sanded or finger-jointed, of a thickness exceeding 6 mm . . . Of tropical wood specified in subheading note 1 to this chapter:

specifically reference "virola," others only reference "tropical wood," but it is understood that "virola" falls within this category.[13]  Within the text of the HTSUS itself, there is no definition of "virola."

Where a tariff term is not statutorily defined, it is assumed to carry its common meaning.  Mita Copystar America v. United States, 21 F.3d 1079, 1082 (Fed. Cir. 1994) ("When a tariff term is

---

Virola"), and subheading 4408.39.00 (covering "[v]eneer sheets and sheets for plywood (whether or not spliced) and other wood sawn lengthwise, sliced or peeled, whether or not planed, sanded or finger-jointed, of a thickness not exceeding 6 mm . . . Of tropical wood specified in subheading note 1 to this chapter . . . Other"). See subheadings 4403.49.00, 4407.24.00, and 4408.39.00, HTSUS.

[13]Subheading note 1 to Chapter 44 reads as follows:

1.    For the purposes of subheadings 4403.41 to 4403.49, 4407.24 to 4407.29, 4408.31 to 4408.39 and 4412.13 to 4412.99, the expression "tropical wood" means one of the following types of wood:

> Abura, Acajou d'Afrique, Afrormosia, Ako, Alan, Andiroba, Aningré, Avodiré, Azobé, Balau, Balsa, Bossé clair, Bossé foncé, Cativo, Cedro, Dabema, Dark Red Meranti, Dibétou, Doussié, Framiré, Freijo, Fromager, Fuma, Geronggang, Ilomba, Imbuia, Ipé, Iroko, Jaboty, Jelutong, Jequitiba, Jongkong, Kapur, Kempas, Keruing, Kosipo, Kotibé, Koto, Light Red Meranti, Limba, Louro, Maçaranduba, Mahogany, Makoré, Mansonia, Mengkulang, Meranti Bakau, Merawan, Merbau, Merpuah, Mersawa, Moabi, Niangon, Nyatoh, Obeche, Okoumé, Onzabili, Orey, Ovengkol, Ozigo, Padauk, Paldao, Palissandre de Guatemala, Palissandre de Para, Palissandre de Rio, Palissandre de Rose, Pau Marfim, Pulai, Punah, Ramin, Sapelli, Saqui-Saqui, Sepetir, Sipo, Sucupira, Suren, Teak, Tiama, Tola, Virola, White Lauan, White Meranti, White Seraya, Yellow Meranti.

Subheading note 1, Chapter 44, HTSUS.

not defined in either the HTSUS or its legislative history, the term's correct meaning is its common meaning.") (citing Lynteq, Inc. v. United States, 976 F.2d 693, 697 (Fed. Cir. 1992); Winter-Wolff, Inc. v. United States, 22 CIT 70, 74, 996 F. Supp. 1258, 1261 (1998) (citations omitted).

The Court generally looks to standard lexicographic sources to determine the common meaning of a tariff term.  See Brookside Veneers, Ltd. V. United States, 847 F.2d 786, 789 (Fed. Cir. 1988) (internal citations omitted).  Also helpful are the Explanatory Notes to the HTSUS, which, although not binding, provide guidance in interpreting the HTSUS.  See Carl Zeiss, Inc. v. United States, 195 F.3d 1375, 1378 n.1 (Fed. Cir. 1999) (citation omitted); see also Russell Stadelman & Co. v. United States, 23 CIT 1036, 1039-40, 83 F. Supp. 2d 1356, 1359 (1999) (internal citations omitted).

The Court has located two lexicographic sources that define "virola."  A Dictionary of Plant Sciences defines "virola" as "[a] genus of plants some of which are big trees and an important source of timber."  A Dictionary of Plant Sciences at 471 (2d ed. 1998). Webster's Third New International Dictionary defines "virola" as "a genus of chiefly So. American forest trees (family Myristicaceae) which yield pale to reddish brown wood."  Webster's Third New International Dictionary at 2556 (1993).  These definitions appear to limit the term to trees of the genus "virola."

An annex to the Explanatory Notes for Chapter 44 contains a

chart which compares the woods listed in subheading note 1 of Chapter 44 against the scientific names of the trees which are denoted by that name, as well as common names for the trees over a variety of countries. Harmonized Commodity Description and Coding System, Annex: Appellation of Certain Tropical Woods (2d ed. 1996) at 690.[14] This chart indicates that the scientific names corresponding to the term "virola" are "virola spp." Harmonized Commodity Description and Coding System, Annex: Appellation of Certain Tropical Woods (2d ed. 1996) at 713. The word "virola" in the phrase "virola spp." refers to the genus of the covered trees; the word "spp." is an abbreviation of "species plurales." Russell Stadelman & Co. v. United States, 23 CIT at 1037 n.1, 83 F. Supp. 2d at 1357 n.1. Thus, all species of the genus "virola" are covered under the pilot-name "virola" as used in the Explanatory Notes. The common meaning of the term "virola" would then appear to

---

[14]The names which appear in subheading note 1 to Chapter 44, and which appear in the first column of the chart in the annex to the Explanatory notes:

> are designated according to the pilot-names recommended by the International Technical Association for Tropical Timber (l'Association technique internationale des bois tropicaux) (ATIBT). The pilot-name is based on the popular name employed in the principal country of production or of consumption.

> The relevant pilot-names, together with corresponding scientific and local names, are listed in the Annex to the Explanatory Notes to this Chapter.

Harmonized Commodity Description and Coding System, Subheading Explanatory Note, Chapter 44 (2d ed. 1996) at 671.

encompass any wood of a tree of the genus "virola," but not the wood of trees of other genuses.[15]

The law would have the Court assume that the common meaning and the commercial meaning of the tariff term at issue are identical. Winter-Wolff, Inc. v. United States, 22 CIT at 74, 996 F. Supp. at 1261 (internal citations omitted). Plaintiff, however, contends that they are not, and that there is an established commercial meaning within the trade for "virola" which is

---

[15]Neither "sumauma," "faveira," nor "amesclao" are trees of the "virola" genus. Plaintiff invoiced its entries as "Sumauma (C. Petanda) Plywood," "Faveira (Parkia spp.) Plywood," "Amesclao (T. Burseaefolia) Plywood," and "Edaiply Faveira (Parkia spp.)." See Pl.'s Br. at 4-5. Plaintiff has identified its "faveira" as being wood of the genus "parkia," rather than the genus "virola." "Sumauma" and "amasclao," as entered by Plaintiff, are likewise not of the genus "virola." The "C." in "C. Petanda" would apparently stand for the genus "ceiba." See Russell Stadelman & Co. v. United States, 23 CIT at 1036 n.1, 83 F. Supp. 2d at 1357 n.1; Harmonized Commodity Description and Coding System, Annex: Appellation of Certain Tropical Woods (2d ed. 1996) at 700. The "T." in "T. Burseaefolia" would appear to stand for the genus "trattinickia." See Universidad de Cordoba, Principales especies maderables comercializadas, at http://www.uco.es/organiza/ servicios/jardin/cd1/Maderas%20CITES/anexoII.htm (last visited May 24, 2004) (listing "trattinickia spp." and "tetragastris spp." as the scientific names corresponding to the commercial name "amesclao"); Manejoflorestal.org, Lista de espécies madereiras, at http://www.manejoflorestal.org/guia.cfm? cap=12 (last visited May 24, 2004) (listing "breu" and "amescla" as common names of "Trattinickia burseraefolia Mart") (the Court reads that Plaintiff's use of "burseaefolia" is most likely a misspelling of "burseraefolia"). Plaintiff also invoiced some entries as "Brazilian White Virola Rotary Cut Plywood," "White Virola Plywood," and "White Virola (Virola spp.) Plywood," but in stating that the genuses on the entry papers were listed only for regulatory purposes, appears to admit that the wood represented in these entries may not be of the genus "virola." See Pl.'s Br. at 4-5; see supra notes 7, 9.

considerably more expansive than the "common" meaning, and which describes the merchandise at issue. Where it is argued that the common and commercial meanings differ, the commercial meaning will not prevail unless a party can demonstrate that the commercial meaning is "definite, uniform, and general" throughout the trade. Rohm & Haas Co. v. United States, 727 F.2d 1095, 1097 (Fed. Cir. 1984) (quoting Moscahlades Bros. v. United States, Inc., 42 C.C.P.A. 78, 82 (1954)).[16]

Accordingly, to establish that its proposed commercial designation of "virola" displaces the common meaning of that tariff term, Plaintiff must prove that the term "virola" has a commercial meaning in the trade "which is general (extending over the entire country), definite (certain of understanding) and uniform (the same everywhere in the country," and that this commercial meaning encompasses Plaintiff's merchandise. Rohm & Haas Co. v. United

_____

[16]The term "virola" was placed into the HTSUS by presidential proclamation, rather than by act of Congress. See Proclamation No. 6857, 60 Fed. Reg. 64,817, 64,887, 64,889 (Dec. 15, 1995), Proclamation No. 6948, 61 Fed. Reg. 56,385, 56,393 (Oct. 31, 1996). The first proclamation, among other things, struck "baboen" from the list of woods in subheading note 1 to chapter 44, and replaced it with "virola." See Proclamation No. 6857, 60 Fed. Reg. at 64,889 (Dec. 15, 1995). The second proclamation amended subheading 4412.13 to provide specifically for plywood "with at least one outer ply of . . . virola," rather than the more general previous reference to plywood "with at least one outer ply of tropical wood specified in subheading note 1 to this chapter." See Proclamation No. 6948, 61 Fed. Reg. at 56,393 (Oct. 31, 1996); cf. subheading 4412.13, HTSUS (1996), with subheading 4412.13.40, HTSUS (1997). Nonetheless, the logic and substance of the requirements articulated in Rohm & Haas Co. still hold.

States, 5 CIT 218, 226, 568 F. Supp. 751, 757 (1983) (citing S.G.B. Steel Scaffolding & Shoring Co. v. United States, 82 Cust. Ct. 197, 206, C.D. 4802 (1979) (internal citations omitted)). Each of these constitutes an essential element of Plaintiff's claim.

Plaintiff, however, has failed to produce evidence which a reasonable mind, even drawing all inferences in Plaintiff's favor, could find sufficient to fulfill the Rohm & Haas Co. test. Plaintiff has failed to make a sufficient initial showing of a commercial meaning that is definite, general, and uniform; in addition, Plaintiff has failed to show that even if its purported commercial meaning were accepted, the merchandise in issue would be described by it. In evaluating the evidence Plaintiff has put forth, the Court first discusses the requirements of generality, uniformity, and definiteness, and then discusses the suitability of Plaintiff's purported commercial meaning to the merchandise at issue.

Plaintiff has produced affidavits and deposition evidence from persons who identify themselves as wholesalers of plywood, and who testify as to a general use for the term "virola" among such wholesalers. However, if an article or good is only known by a certain name "in one trade or branch of trade," no commercial designation can follow. Maddock v. Magone, 152 U.S. 368, 372 (1894). In this case, it is not the meaning of "plywood" that is being construed; it is the meaning of "virola." "Virola," whatever

it may be, is imported by trades other than the plywood trade, as evidenced by the term's several appearances throughout Chapter 44 of the HTSUS. More specifically, the HTSUS contemplates the importation of "virola" by those who import wood in the rough, wood sawn or chipped lengthwise, as well as veneer sheets and sheets for plywood (whether or not spliced) and other wood sawn lengthwise. See supra note 12.

Even if Plaintiff's purported commercial designation for the term "virola" were to be found consistent within the plywood trade, without evidence as to the term's usage in the other trades importing "virola," the Court cannot find that Plaintiff has made a sufficient initial demonstration of a general meaning for the term. Where a single term is used multiple times over the course of a statute, the courts presume that the meaning of the term remains consistent. See, e.g., RHP Bearings Ltd. v. United States, 288 F.3d 1334, 1346-47 (Fed. Cir. 2002); SKF USA Inc. v. United States, 263 F.3d 1369, 1382 (Fed. Cir. 2001).[17] There is no sign

---

[17]Both RHP Bearings Ltd. and SKF USA Inc. involved a term in the dumping statutes which, in addition to being used multiple times, was also statutorily defined. See RHP Bearings Ltd. v. United States, 288 F.3d at 1346-47; SKF USA Inc. v. United States, 263 F.3d at 1382. Although "virola" is not defined in the text of the HTSUS, the Court cannot see why the lack of a statutory definition should permit the definition of "virola" to change from provision to provision, especially in light of a definition in the Explanatory Notes. Moreover, even were there no definition occurring in the Explanatory Notes, it is inappropriate for the Court to allow the word "virola" to take on different meanings with each provision in the absence of any indication that this was intended by Congress.

or indication that Congress intended for more than one meaning of "virola" to be applied in construing the terms of the HTSUS. Therefore, to show a "general" commercial meaning for the term "virola," it is necessary for Plaintiff to place before the Court evidence with regard to the term's use generally.  This it has failed to do.

Plaintiff argues that it is not required to put forth evidence with regard to any merchandise other than that which is at issue here.  See Pl.'s Resp. to Def.'s Mot. to Dismiss in Part for Lack of Subject Matter Jurisdiction and Cross-Mot. for Summ. J. at 21 ("Pl.'s Resp.").  Although this might be true in another case, the Court cannot agree with the proposition as applied here because of the number of different tariff provisions that use the term "virola."  The statutory construction dilemma is unavoidable here.[18]

_____

   [18]Moreover, the single case which Plaintiff cites for the proposition that no evidence is necessary with regard to the meaning of "virola" in other trades that import "virola" is inapposite.  Plaintiff cites Am. Net & Twine Co. v. Worthington, 141 U.S. 468 (1891).  See Pl.'s Resp. at 21 n.8. Contrary to Plaintiff's claim, that case does not stand for the proposition that the meaning a term in contention holds in other, similar trades that use the term is irrelevant.  Rather, that case is simply one recognizing that an eo nomine provision which was specific in its reference to a particular use prevailed over a more general, otherwise applicable provision.  See Am. Net & Twine Co. v. Worthington, 141 U.S at 472.  The case involved linen thread which was imported into the United States as "gilling twine" for the repair of fishing nets.  Id. at 471.  The Supreme Court found that, although the merchandise was classifiable as linen thread, because it had been imported into the country solely for use in the repair of nets, and because Congress, in providing for "gilling twine," obviously intended the classification of goods used as such, the thread at issue

Plaintiff's failure to meet its initial burden of proof with regard to generality also applies to the requirement of uniformity. Because Plaintiff has produced only the testimony of plywood wholesalers, the Court cannot determine whether wholesalers of other trades located in various portions of the country and importing "virola" wood into the United States <u>uniformly</u> use the same definition of "virola" asserted by Plaintiff. Without some such proof, a commercial meaning of "virola" that satisfies principles of statutory construction cannot follow.

Plaintiff's threshold showing also fails the requirement of definiteness. To be definite, a purported commercial meaning must be "certain of understanding." <u>S.G.B. Steel Scaffolding & Shoring Co. v. United States</u>, 82 Cust. Ct. 197, 206 (1979). Plaintiff's claimed commercial meaning of "virola" encompasses more than wood of the "virola" genus; it would include wood of "near species," which Plaintiff contends include "sumauma," "faveira," and "amesclao." Pl.'s Br. at 1. All told, Plaintiff contends that

---

should be classified as "gilling twine," rather than as linen thread, in recognition of its intended use. <u>Id.</u> at 474. Moreover, although the language of commercial designation is used in the case, the case is so factually distinct as to have no bearing on the issues before the Court in this action because in that case, there was no question as to what materials Plaintiff's product consisted of; the question focused entirely on the product's use. The instant case focuses on whether or not the material of which Plaintiff's plywood is made is, in fact, "virola"; the question does not rise to one of material fact, however, because of Plaintiff's failure to put forth sufficient evidence to meet its initial burden under USCIT R. 56. <u>See</u> <u>infra</u> pp. 18-20.

there are approximately thirty-five species of trees which are commercially known as "virola." Pl.'s Br. at 5. However, Plaintiff at no time identifies those species, and none of the affiants or deponents whose testimony Plaintiff places before the Court identifies them.

Plaintiff argues that it is not required to identify the thirty-five "near species," other than to show that "sumauma," "faveira," and "amesclao" are among them, because this suffices to satisfy the requirement that its commercial meaning be "certain of understanding." See Pl.'s Resp. at 20, 24. On the contrary, however, to the extent that the terms used in the HTSUS are meant to enable a Customs officer to classify a good, a definition that includes "approximately thirty-five" otherwise unnamed species of wood, without more, cannot be considered definite. Inasmuch as the definition inherently includes unknown species, it cannot be "certain of understanding" for purposes of administering the HTSUS.[19]

_____

[19]Plaintiff apparently relies again on the notion that it need not put forth evidence with regard to merchandise not actually before the Court, and relies on United States v. Fung Chong Co., 34 C.C.P.A. 40 (1946) for the proposition that it need not show what is excluded from the meaning of a tariff term, but only that its merchandise is included therein. See Pl.'s Resp. at 24. Fung Chong Co., however, involved the failure to prove a commercial designation of the term "orange." The Court there held that in the absence of proof of the term's meaning, testimony that the merchandise at issue was excluded from the term was insufficient to establish commercial designation. United States v. Fung Chong Co., 34 C.C.P.A. at 44. Certainly, Fung Chong Co. does not help the Plaintiff here. Here,

Finally, Plaintiff has failed to make an initial showing that its purported commercial designation would apply to the merchandise before the Court. Plaintiff effectively concedes that the wood names listed on its entry papers do not in fact reflect the actual species composition of the entries, but were chosen for regulatory purposes. See Pl.'s Br. at 5, 8. In other words, Plaintiff's entries may not consist entirely of "sumauma," "faveira," and "amasclao," the three woods that Plaintiff asserts are known commercially as "virola." Certainly the true identity of the outer ply is unknown. If Plaintiff is unable to identify the species composition of its entries, it cannot make the necessary threshold demonstration that the entries could be classified under a commercial designation that is based on species identification.[20]

---

Plaintiff's refusal to identify the species on the basis that they are not before the Court is not sufficient where Plaintiff seeks to include these species in its purported commercial designation.

[20]Given the nature of the evidence in this case, Plaintiff's insistence on a commercial meaning predicated on species appears particularly problematic. Plaintiff did not advance a commercial meaning of "virola," that, rather than emphasizing particular species, emphasized certain qualities of the wood, such as its durability and strength. The affidavit and deposition evidence from Plaintiff's witnesses coalesces far more strongly around the idea that "virola" refers to wood of certain physical characteristics, rather than wood from certain species. See Bennett Aff., Pl.'s Ex. 2 para. 4, Heitzmann Aff., Pl.'s Ex. 5 para. 6, Stadelman Aff. II, Pl.'s Ex. 3 para. 2, Rego Aff., Pl.'s Ex. 7 para. 4, Hall Depo., Def.'s Ex. E at 67, Rego Depo. I, Pl.'s Ex. 9 at 67, Rego Depo. II, Def.'s Ex. B at no. 10. Consequently, Plaintiff's insistence on a commercial meaning based on species exposes this basic fault in Plaintiff's proof: although the actual species makeup of the wood at issue is

Plaintiff has failed to produce evidence that the merchandise contained in its entries is encompassed by its asserted commercial designation of "virola."[21]  Accordingly, Plaintiff, having failed to meet its threshold burden of proof on its motion for summary judgment, has failed show that it is entitled to judgment as a matter of law.[22]

---

unknown, Plaintiff still contends that it is made up of approximately thirty-five species known as "virola," rather than wood of a durability, or color, or strength which could mark it commercially as "virola."

    [21]Plaintiff points the Court to Neuman & Schwiers Co. v. United States, for the proposition that its evidence is sufficient to carry its burden on summary judgment.  See Pl.'s Resp. at 25-27; Neuman & Schwiers Co. v. United States, 24 C.C.P.A. 127 (1936).  The evidence in Neuman & Schweiers Co. consisted of ten witnesses for the plaintiff who all testified that plaintiff's product was commercially known and sold in the trade as "sauce."  Neuman & Schwiers Co. v. United States, 24 C.C.P.A. at 132-33.  None of the witnesses contradicted each other, nor were any witnesses who testified to the contrary produced by the government.  See id. at 129-130.  In this case, Plaintiff has likewise produced a series of statements by witnesses who have no particular contradictions in their testimony that "sumauma," "faveira," and "amasclao" are all commercially known as "virola."  The government has produced no affiants or deponents to contradict the evidence of Plaintiff's witnesses.  In Neuman & Schwiers Co., however, the definition of "sauce" was clearly established by the witnesses, and shown to be general, uniform, and definite with regards to the wholesaling of "sauce."  This case is clearly distinguishable.  As laid out above, Plaintiff has failed to show a commercial meaning of "virola" that is used generally and uniformly by wholesalers of that good, and moreover has failed to provide a meaning which is "definite."

    [22]The Court's disposition of this case renders moot Plaintiff's motion in limine to strike exhibits and Defendant's motion to dismiss in part for lack of subject matter jurisdiction.  See Pl.'s Mem. Supp. Mot. in Limine to Strike Exhibits; Def.'s Mem. Supp. Mot. to Dismiss in Part of Lack of

**CONCLUSION**

Plaintiff has failed to produce sufficient evidence which, even drawing all inferences in its favor, could demonstrate the existence of a commercial designation for "virola" that is definite, general, and uniform; moreover, Plaintiff has failed to adduce proof demonstrating that its merchandise would be embraced by the commercial designation it advances in this litigation. Plaintiff has failed to show that it is entitled to judgment as a matter of law in this case. Plaintiff's motion for summary judgment is therefore denied, and judgment is entered for the Defendant.

/s/ Donald C. Pogue
Donald C. Pogue
Judge

Dated:     June 2, 2004
           New York, New York

---

Juris. & Cross-Mot. Summ. J. at 6-8.