# United States Court of Appeals for the Federal Circuit

2007-1136

TIMBER PRODUCTS CO.,

Plaintiff-Appellant,

v.

UNITED STATES

Defendant-Appellee.

Beth C. Ring, Sandler, Travis & Rosenberg, P.A., of New York, New York, argued for plaintiff-appellant. With her on the brief were Gilbert Lee Sandler, Edward Joffe, and Arthur Purcell.

Mikki Graves Walser, Attorney, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice, of New York, New York, argued for defendant-appellee. With her on the brief were Peter D. Keisler, Assistant Attorney General, Jeanne E. Davidson, Director, and Barbara S. Williams, Attorney in Charge. Of counsel on the brief was Michael W. Heydrich, Office of the Assistant Chief Counsel, United States Customs and Border Protection, of New York, New York.

Appealed from: United States Court of International Trade

Judge Donald C. Pogue

# United States Court of Appeals for the Federal Circuit

2007-1136

TIMBER PRODUCTS CO.,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

Appeal from the United States Court of International Trade in case no. 01-00216, Judge Donald C. Pogue.

DECIDED: January 24, 2008

Before SCHALL, <u>Circuit Judge</u>, PLAGER, <u>Senior Circuit Judge</u>, and MOORE, <u>Circuit Judge</u>.

SCHALL, <u>Circuit Judge</u>.

This case involves the tariff classification of plywood imported into the United States from Brazil by Timber Products Co. ("Timber"). Timber appeals the final decision of the United States Court of International Trade, following a trial, that the United States Bureau of Customs and Border Protection ("Customs") correctly classified Timber's

plywood entries under subheading 4412.14.30 of the Harmonized Tariff Schedule of the United States ("HTSUS").[1] Timber Prods. Co. v. United States, 462 F. Supp. 2d 1342, 1363 (Ct. Int'l Trade 2006) ("Timber III"). That subheading imposes a duty of 8% ad valorem. Harmonized Tariff Schedule, HTSUS 4412.14.30. Timber had urged classification under HTSUS subheading 4412.13.40, which covers "Plywood . . . [w]ith at least one outer ply of the following tropical woods: . . . 'Virola.'"[2] Entries under that subheading are duty-free. Harmonized Tariff Schedule, HTSUS 4412.13.40.

It is undisputed that, under HTSUS 4412.13.40, the common meaning of "Virola" is limited to the botanical genus Virola spp. Before the Court of International Trade, Timber sought to establish that "Virola" has a broader "commercial designation" within the plywood trade that encompasses many different woods, including the "Sumauma," "Faveira," "Amesclao," "Brazilian White," "White Virola (Virola spp.)" and "Edaiply

---

[1]     Subheading 4412.14.30, HTSUS (1997), reads:
4412   Plywood, veneered panels and similar laminated wood:
       Plywood consisting solely of sheets of wood, each ply not exceeding 6 mm in thickness:
       Other, with at least one outer ply of nonconiferous wood:
4412.14.30   Other
[2]     Subheading 4412.13.40, HTSUS (1997), reads:
4412   Plywood, veneered panels and similar laminated wood:
       Plywood consisting solely of sheets of wood, each ply not exceeding 6 mm in thickness:
       With at least one outer ply of tropical wood specified in subheading note 1 to this chapter:
4412.13.40   Other:
       With at least one outer ply of the following tropical woods:  Dark Red Meranti, Light Red Meranti, White Lauan, Sipo, Limba, Okoume, Obeche, Acajou d'Afriquee, Sapelli, Virola, Mahogany, Palissandre de Para, Palissandre de Rio or Palissandre de Rose.
       (emphasis added).

Faveria" woods listed on its entry invoices.[3]   Timber thus sought to establish a commercial designation for "Virola" that would encompass each of the species listed on its invoices, thereby qualifying its plywood for duty-free treatment.   In sustaining Customs' classification of Timber's plywood in Timber III, the Court of International Trade held that Timber had failed to establish a commercial designation for "Virola."  We affirm.

BACKGROUND

I

Plywood consists of three or more wooden sheets pressed together, with each sheet referred to as a "ply."  One outer ply is called the "face" ply; the other outer ply is called the "backing"; the middle ply or plies comprise the "core."   Although these component plies may present different species of wood, plywood is identified based on the species found on its "face" ply.

Between July 1996 and December 1997, Timber imported the plywood at issue into the United States from Brazil.   However, due to the particular nature of the manufacturing and exporting processes in Brazil, in which various species of wood are first mixed together and then sorted by quality rather than species, the exact botanical identity of the face ply of Timber's imported plywood was unknown.  Thus, the names appearing on the entry documents for Timber's plywood imports did not necessarily reflect the botanical species on the face plies, since Timber could not determine this information.   Timber's shipping and entry documents, though, listed the subject

---

[3]      As discussed below, "commercial designation" refers to a definite, uniform, and general commercial meaning for a term that is so widespread throughout the relevant industry that, for tariff purposes, it effectively supersedes the common meaning of the term.

merchandise as "Sumauma (C. Pentanda) Plywood," "Faveira (Parkia Spp.) Plywood," "Amesclao (T. Burseaefolia) Plywood," "Brazilian White Rotary Cut Plywood," "White Virola Plywood," "White Virola (Virola spp.) Plywood," and "Edaiply Faveira (Parkia spp.)."

"Virola" refers to a botanical genus consisting of approximately 45 to 60 different species of tropical hardwood. The term "Virola spp." denotes all species of the genus Virola. "Virola" is also a commercial term used within the plywood trade. See Timber III, 462 F. Supp. 2d at 1347. The terms "Sumauma," "Faveira," "Edaiply Faveira," "Amesclao," and "Brazilian White" are each trade or common terms for various species of tropical hardwood from botanical genera other than "Virola." Id.

When Timber's plywood was imported, plywood with an outer ply of tropical hardwood (such as "Virola") was classified under HTSUS subheading 4412.13.40 and therefore duty-free. Id. In contrast, plywood with an outer ply of "other" nonconiferous wood was classified under HTSUS subheading 4412.14.30 and subject to a duty of 8% ad valorem. Id.

Timber sought to classify its merchandise as "Virola" under subheading 4412.13.40 in order to receive duty-free treatment under that provision. Timber argued to Customs that there was an established commercial designation for the term "Virola" in subheading 4412.13.40 that extended beyond the botanical genus "Virola" and that encompassed various types of wood, including the types of wood listed on its entries. More specifically, Timber argued that the term "Virola" is a commercial designation in the plywood trade for a group of approximately thirty-five "near species" of tropical hardwood with similar physical properties, including density and hardness. Customs,

however, disagreed and liquidated the plywood under subheading 4412.14.30, the residual provision that requires an 8% duty ad valorem. Id.

II

After Customs denied protests filed by Timber in accordance with 19 U.S.C. § 1514, Timber filed suit in the Court of International Trade. In due course, ruling on the parties' cross-motions for summary judgment, the court held that Customs had correctly classified the merchandise at issue under subheading 4412.14.30 rather than subheading 4412.13.40. The court did so after concluding that Timber had failed to adequately prove its asserted commercial designation for Virola. Timber Prods. Co. v. United States, 341 F. Supp. 2d 1241, 1251 (Ct. Int'l Trade 2004) ("Timber I"). In reaching that conclusion, the court ruled that Timber was required to prove a commercial meaning for Virola that applied throughout every trade contemplated by the HTSUS. In other words, Timber had to demonstrate that its proposed commercial designation applied not only throughout the plywood industry, but also throughout every other trade that imported "Virola." Id. at 1248-49.

Timber appealed the decision in Timber I to this court. On appeal, we held that the Court of International Trade had erred in its commercial designation analysis by requiring evidence from beyond the plywood industry. We stated that the "relevant trade for analyzing whether a tariff term has an established commercial meaning is determined by the merchandise before the court in a particular case, not by all merchandise to which the tariff term might apply." Timber Prods. v. United States, 417 F.3d 1198, 1202 (Fed. Cir. 2005) ("Timber II"). Accordingly, we vacated the decision of the Court of International Trade and remanded the case to the court with the instruction

that it consider whether Timber had proven a commercial designation of "Virola" within the plywood trade alone, and whether the subject merchandise was within that commercial designation. Id. at 1203.

III

A

The law relating to commercial designation is well settled. The proper interpretation of a tariff classification provision is a question of law. Mita Copystar Am. v. United States, 21 F.3d 1079, 1082 (Fed. Cir. 1994). When a tariff term is not defined in either the HTSUS or its legislative history, the term's correct meaning is presumed to be its common meaning in the absence of evidence to the contrary. Rohm & Haas Co. v. United States, 727 F.2d 1095, 1097 (Fed. Cir. 1984). One who argues that a tariff term should not be given its common meaning "must prove that 'there is a different commercial meaning in existence which is definite, uniform, and general throughout the trade.'" Id. (quoting Moscahlades Bros. v. United States, 42 CCPA 78, 82 (1954)). "The concept of commercial designation 'was intended to apply to cases where the trade designation is so universal and well understood that the Congress, and all the trade, are supposed to have been fully acquainted with the practice at the time the law was enacted.'" Id. (quoting Jas. Akeroyd & Co. v. United States, 15 Ct. Cust. 440, 443 (1928)). Proof of commercial designation is a question of fact that must be established in each case. Id. Finally, if the statute indicates a clear Congressional intent, this unambiguous intent must always prevail over any commercial designation. See United States v. Stone & Downer, 16 Ct. Cust. 82, 85 (1928). The burden of proof rests on the party claiming the commercial designation, which must be established by a

preponderance of the evidence.  See United States v. M.J. Brandenstein & Co., 17 CCPA 480, 485 (1930).

B

On remand, and following a trial, the Court of International Trade held that Timber had failed to prove its commercial designation for "Virola."  Timber III, 462 F. Supp. 2d at 1363.  Although it found no clear legislative intent that would preclude a commercial designation analysis, the court determined that Timber had failed to prove its proposed commercial designation for "Virola" because the testimonial and documentary evidence revealed a commercial meaning for the term that was "general," but neither "uniform" nor "definite."

Preliminarily, the court observed that it was "not entirely clear what definition of 'Virola plywood' [Timber] wishes to adopt."  Timber III, 462 F. Supp. 2d at 1354 n.13. Noting what had been argued in Timber I, the court stated that it was unclear whether Timber was urging that the commercial meaning for "Virola plywood" encompassed "a group of approximately thirty-five 'near species' of tropical hardwood with similar physical properties," or a broader definition encompassing "hardwood plywood made from mixed tropical species from Brazil."  Id.  In any event, the court determined, Timber had failed to establish that, in the plywood trade, "Virola" was a commercial designation for either a group of thirty-five near species of tropical hardwood or a product that was a mixture of such tropical hardwood species.  Id. at 1363.

First, the court concluded that Timber had failed to show that its proposed commercial designation was uniform.  The court reached this conclusion based upon what it viewed as inconsistencies between the testimony of witnesses presented by

Timber. Some witnesses testified that "Virola" represented "a mixture of tropical hardwood species from Brazil," while others maintained that "Virola" referred to "approximately thirty-five different species, including botanical Virola." Id. at 1355. Likewise, some witnesses emphasized that "Virola" plywood came from Brazil, while others stated that it also came from places throughout South America other than Brazil. Id. Various marketing materials further contradicted the witness testimony, the court found. Id. at 1356-57.

Similarly, the court concluded that Timber had failed to show that its proposed commercial designation for "Virola" was definite. The court determined that Timber's witnesses could not agree on the component species properly included within the commercial meaning of "Virola." Id. at 1358. Rather, witnesses "could only agree on a few of the species that are included in the purported commercial designation of Virola." Id. Moreover, the court viewed these witnesses as identifying "very different numbers for the constituent species[,] from 'five or six,' to twenty to thirty, to thirty-five." Id.

Because, in the Court of International Trade's view, contradictory evidence rendered Timber's proposed commercial designation neither uniform nor definite, the court affirmed Customs' classification of Timber's plywood. The court therefore sustained Customs' denial of Timber's protest.

DISCUSSION

I

We have jurisdiction over Timber's appeal pursuant to 28 U.S.C. § 1295(a)(5). Following a trial, we review the Court of International Trade's findings of fact for clear error. Ford Motor Co. v. United States, 286 F.3d 1335, 1340 (Fed. Cir. 2002). A finding

is clearly erroneous when, although there is evidence to support it, the reviewing court is left with a "definite and firm conviction that a mistake has been committed." United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948). We review the Court of International Trade's legal conclusions de novo. Texport Oil Co. v. United States, 185 F.3d 1291, 1294 (Fed. Cir. 1999). "Proof of commercial designation is a question of fact reviewed under the clearly erroneous standard." Russell Stadelman & Co. v. United States, 242 F.3d 1044, 1048 (Fed. Cir. 2001) (citing Rohm & Haas, 727 F.2d at 1097).

II

Before turning to the arguments Timber makes on appeal, we address a preliminary contention by the government. As just seen, the Court of International Trade concluded that the HTSUS contained no clear Congressional intent with respect to the meaning of the term Virola so as to preclude a commercial designation analysis. The government urges to the contrary, however. According to the government, there was a clear Congressional intent to limit the meaning of "Virola" to its common botanical meaning, which encompasses "any wood of a tree of the genus 'virola,' but not the wood of trees of other genuses." Timber I, 341 F. Supp. 2d at 1247. We reject the government's argument on this point. We are bound by our decision in Timber II as law of the case. See Arizona v. California, 460 U.S. 605, 608 (1983) (noting that the law of the case doctrine "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case."). In Timber II, we necessarily concluded that there was no clear Congressional intent that would preclude a commercial designation analysis with respect to the term "Virola."

Otherwise, there would have been no reason for a remand to the Court of International Trade for such an analysis, which was undertaken in Timber III.

III

We turn now to Timber's arguments on appeal. Timber contends that the Court of International Trade erred in finding its proposed commercial designation of "Virola" neither uniform nor definite. It contends that, on both points, the court made clearly erroneous findings of fact and committed errors of law.

A

In order for a commercial designation to be uniform, it must be the same throughout the trade. As seen, the Court of International Trade concluded that Timber's proffered commercial designation of "Virola"—a term referring to either a group of tropical hardwood species with similar properties or a term referring to a product that is a mixture of such species—was not uniform because of inconsistencies in the testimony of Timber's witnesses. Timber contends that the court clearly erred in finding such inconsistencies because its analysis was based on what Timber terms "two fallacious premises." First, according to Timber, it never said "Virola" was a commercial designation for approximately thirty-five species of trees. Instead, Timber asserts, it consistently stated that the term referred to a mixture of tropical species from Brazil. Second, Timber argues that, in any event, a definition encompassing approximately thirty-five species is not inconsistent with one encompassing a mixture of such species. As we understand it, Timber is arguing that there are no inconsistencies between the two separate definitions identified by the Court of International Trade, one of which emphasizes that "Virola" represents a mixture of tropical hardwood species from Brazil,

while the other indicates that "Virola" refers to approximately thirty-five different species, including botanical "Virola." In essence, Timber argues that these definitions are not inconsistent because they are not contradictory.

We reject Timber's arguments. In the first place, we see no error in the Court of International Trade's statement that Timber had taken the position that "Virola" was a commercial designation for approximately thirty-five species of trees. Indeed, we said precisely that in Timber II. See 417 F.3d at 1200 ("According to Timber, the term 'Virola' is a commercial designation in the plywood trade for a group of approximately thirty-five 'near-species' of tropical hardwood with similar physical properties, including density and hardness."). Most importantly, however, the testimony of Timber's witnesses was, as the Court of International Trade found, inconsistent. As the court indicated in its opinion, there was a "disparity between the various definitions provided" by Timber's witnesses, "because one emphasizes that the plywood represents a mixture of tropical hardwood species from Brazil, while the other emphasizes that there are approximately thirty-five different species, including botanical Virola." Timber III, 462 F. Supp. 2d at 1355. Furthermore, the court observed, one witness testified that Virola plywood could in fact come "from places other than Brazil." Id. In addition, the court examined various marketing materials and other printed publications which contradicted Timber's assertion that "Virola" plywood was known throughout the plywood industry as a mixture of hardwood species from Brazil. Id. at 1356-57. In short, the testimonial and documentary evidence demonstrates that Timber was unable to establish a commercial designation for "Virola" that was the same throughout the plywood trade.

Neither do we think that the Court of International Trade viewed the uniformity issue through the wrong legal prism. We reject Timber's contention that the positions it took in Timber I and Timber III had to contradict each other in order to be inconsistent. In our view, contradiction is a sufficient, but not necessary, condition for finding inconsistency. Accepting Timber's contention would undermine the commercial designation analysis by encouraging importers to advance excessively broad, vague, or ambiguous definitions simply to avoid contradiction. We think that, in order to establish a commercial designation, a party must do more than simply show the absence of contradiction between different terms. It must prove a widely understood commercial meaning that applies everywhere throughout the relevant industry. In this case, Timber failed to carry that burden.

B

In order for a commercial designation to be definite, it must be certain of understanding. As seen, the Court of International Trade found that Timber's witnesses could not agree on the component species properly included within the proposed commercial meaning of "Virola," with witnesses identifying a disparate number of component species ranging from as few as five or six to as many as thirty-five. Timber III, 462 F. Supp. 2d at 1358. Timber contends that the court's finding was based upon an incorrect standard of proof. According to Timber, the court erred by focusing on the component species of Virola rather than the final plywood product, which, it says, was defined as a mixture.

Leaving aside for the moment the uncertainty the Court of International Trade identified in Timber's differing positions in Timber I and Timber III, we do not agree that

the Court of International Trade applied an incorrect standard of proof. Assuming arguendo that "Virola" plywood is a product characterized by a mixture of tropical species, the ability, or lack thereof, to identify the species of woods within that mixture is probative as to whether Timber's proffered commercial meaning was "certain of understanding" and commonly understood throughout the entire plywood industry. Thus, although an exact agreement among every witness may have been unnecessary, the Court of International Trade reasonably required a general consensus as to the approximate number of species properly included within the commercial meaning of "Virola" plywood.[4] It found no such general consensus after examining the testimonial and documentary evidence presented at trial.

The evidence fully supports the finding of the Court of International Trade that Timber failed to establish a definite commercial designation. To give just one example, John Rego, who was President of Gulfstream Traders, Ltd., which represented the

---

[4] Timber argues that the decision in United States v. Georgia Pulp & Paper Manufacturing Co., 3 CCPA 410 (1912), supports the proposition that a definite commercial designation does not require agreement as to the entire universe of individual components. That case is inapposite, however. In Georgia Pulp, the subject merchandise consisted of various woodworking machines; the question was whether they could be properly classified for tariff purposes as "machine tools." 3 CCPA at 410. The government sought to establish a commercial designation for "machine tools" that included only metalworking machines and excluded woodworking machines such as the merchandise at issue. Id. at 411. Although witnesses disagreed as to whether certain metalworking machines were machine tools, "they were at no disagreement that a machine tool was in the trade understood to be one that worked metal in some manner and was limited thereto." Id. at 413. Thus, all of the witnesses in fact agreed that the commercial meaning of "machine tool" included only metalworking machines and excluded the imported woodworking machines. Because the witnesses uniformly agreed that the commercial designation excluded the imported merchandise, their disagreement over whether specific metalworking machines were within the meaning of "machine tool" was irrelevant. Here, however, because Timber sought to establish a commercial designation for "Virola" that included various species of wood, the witnesses' disagreements as to the component species covered by the term "Virola" was relevant to whether the proposed commercial designation for "Virola" was definite.

largest Brazilian mills that manufactured and sold "Virola plywood" to the United States, testified that "the composition of the groups of woods comprising 'Virola plywood' changed over time." Timber III, 462 F. Supp. 2d at 1348, 1357. Likewise, the court found that "witnesses could only agree on a few of the species that are included in the purported commercial designation," and that those witnesses identified a disparate range of component species from as low as five or six to as many as thirty-five. Id. at 1358. These discrepancies, combined with the fact that Timber offered different definitions throughout the litigation, supports the Court of International Trade's finding that the commercial designation of "Virola" that Timber offered was not certain of understanding throughout the entire plywood industry. Accordingly, the Court of International Trade's determination that Timber's commercial designation of "Virola" was not definite was not clearly erroneous.

IV

Timber's final argument on appeal is that even if "Virola" is limited to its common botanical meaning, Entry number 334-1066732-4, which was invoiced as "White Virola (Virola spp.)," should nonetheless have been liquidated duty-free under subheading 4412.13.40. In other words, because this entry was invoiced according to the common botanical meaning of Virola, it necessarily qualifies for duty-free treatment under subheading 4412.13.40 of the HTSUS. To hold otherwise, Timber argues, would render that statutory provision a nullity, because even merchandise invoiced according to the common meaning of Virola would not come within the meaning of that provision. We reject this argument. It is not the invoice but the goods that determine classification. Timber has been unable to verify the actual contents of its shipments due to the mixing

of species during the plywood manufacturing process employed by Brazilian mills. Because of this failure of proof, the Court of International Trade did not err in sustaining Customs' liquidation of this entry.

## CONCLUSION

For the foregoing reasons, the decision of the Court of International Trade sustaining Customs' classification of Timber's entries of plywood products is affirmed.

## AFFIRMED